TARA PARTNERS, LTD., Granada Terrace, Ltd., David R. Wise, 1606 Savannah LLC, Windsor Gardens, Ltd., and Freeport Villa Brazos Apartments, Ltd., Appellants,

v.

CITY OF SOUTH HOUSTON, Appellee.

No. 14–07–00330–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 13, 2009.

Rehearing and Rehearing En Banc Overruled May 21, 2009.

James H. Leeland, Houston, for appellants.

Scott Bounds, Houston, for appellee.

Panel consists of Justices FROST, SEYMORE, and GUZMAN.

## MAJORITY OPINION

CHARLES SEYMORE, Justice.

In this suit for declaratory judgment and damages related to fees set by a water and sewer utility owned by the City of South Houston, appellants Tara Partners, Ltd., Granada Terrace, Ltd., David R.

Wise, 1606 Savannah LLC, Windsor Gardens, Ltd., and Freeport Villa Brazos Apartments, Ltd. challenge an order granting the City's plea to the jurisdiction and dismissing appellants' lawsuit without prejudice. Concluding the district court had jurisdiction over appellants' claims disputing the imposition of fees under the Texas Water Code, but not over appellants' claims for reimbursement for previously paid fees or over Tara Partners, Ltd.'s claims related to an alleged settlement agreement, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The City of South Houston ("the City") is a general law municipality located within Harris County. The City operates its own water and sewer utility systems. Appellant Tara Partners, Ltd. ("Tara") owns apartments within and outside the City's boundaries. The remaining appellants own apartments solely within the City's boundaries. The City provides water to appellants' apartments. From 1992 until 2004, the minimum bill for all city customers was based on water meter size, with an additional charge based on water consumption.

In 2004, the City adopted an ordinance by which it charged residential, outside city residential, and commercial residential users a minimum monthly base rate of $10.00 for water and $12.00 for sewer "for each available unit connected to a meter, whether those units are occupied or vacant." As before, there was also a usage

charge. Appellants fell within the "commercial residential user" category, defined as "all multi-family units containing two or more living units and including trailer parks, motels, apartment projects and hotels." [1] Appellants' estimated water and sewer charges for a two-hundred-unit apartment, with a three-inch meter, and using 750,000 gallons of water a month would increase from $39,294 to $91,622 under the 2004 ordinance.

Appellants sued the City in Harris County District Court, and Tara also separately sought review before the Texas Commission on Environmental Quality ("TCEQ") pursuant to Texas Water Code Section 13.043(b)(3). [2] While the district court case was proceeding, attorneys for Tara and the City signed a hand printed settlement "resolution," which provided in part that the parties agreed the rates set forth in the 2004 ordinance were not "just and reasonable" and "all increased amounts collected under [the 2004 ordinance] shall be returned to [Tara] within 30 days." According to appellants, the City did not comply with this agreement. In amended pleadings in district court, appellants then alleged the following "causes of action": unlawful and unconstitutional taxation in violation of Texas law, unreasonable and unjustified rate discrimination under Texas common law, arbitrary and unreasonable rates under Texas common law, breach of contract, and promissory estoppel (the latter two raised only by Tara and referring to the handwritten resolution). As additional "causes of action," appellants sought a declaratory judgment, including a declaration the handwritten

---

1. We refer to the ordinance at issue as the "2004 Ordinance." The definition of "commercial residential user" was amended in 2005 to exclude hotels and motels.

2. Section 13.043(b) provides in relevant part: "Ratepayers of the following entities may appeal the decision of the governing body of the

entity affecting their water, drainage, or sewer rates to the commission: . . . a municipally owned utility, if the ratepayers reside outside the corporate limits of the municipality." Tex. Water Code Ann. § 13.043(b) (Vernon 2008).

resolution was enforceable, actual damages consisting of "all of the Surcharge collected by [the City]," and attorneys' fees under the Uniform Declaratory Judgment Act.[3]

The City filed a plea to the jurisdiction, and alternatively, special exceptions. The City argued (1) under the Texas Water Code provisions regarding exclusive original and exclusive appellate jurisdiction, the district court lacked subject matter jurisdiction over appellants' challenges to the water and sewer rates;[4] (2) to the extent appellants were seeking common law tort damages, there was no waiver of governmental immunity or constitutional authorization as would give the district court jurisdiction over such claims; and (3) the settlement resolution was not a contract subject to the subchapter under which the legislature had waived governmental im-

---

**3.** *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 37.002, .009 (Vernon 2008). In addition to Tara's requesting a declaration the handwritten resolution was enforceable, appellants sought a declaration that:

(a) ... the [2004] Ordinance is an unlawful ad valorem tax in violation of the Texas Constitution;

(b) ... the [2004] Ordinance is a discriminatory utility rate under Texas law;

(c) ... any presumption that the [2004] Ordinance is valid disappeared because the City acted arbitrarily rather than on the basis of changed conditions when passing the [2004] Ordinance;

(d) ... no conclusive or issuable fact or condition existed which would have authorized the City's passage of the [2004] Ordinance;

(e) ... the City must have introduced substantive evidence and exercised legislative judgment on the basis of that substantive evidence before it in order to validly pass the [2004] Ordinance;

(f) ... the City did not introduce substantive evidence or exercise legislative judgment on any basis of substantive evidence before it when passing the [2004] Ordinance;

(g) the action of the City Council in passing the [2004] Ordinance was arbitrary because it was based on absolutely no investigation of the facts and certainly no investigation of the facts with regard to the City's expenses in providing water and sewer services or as to what rates would enable the City to realize a reasonable return on its investment;

(h) the City's final water and sewer rates under the [2004] Ordinance must, but do not, relate to the actual cost (including only direct and indirect costs) of providing the charged-for service, water and sewer service;

(i) the City's "actual costs" of providing the charged-for service—water and sewer service—under the [2004] Ordinance do not include expenses related to other City departments, such as the police and fire departments, or expenses related to City-wide employee raises to the extent such employees are not a part of the water and sewer service department;

. . . .

(k) ... the [2004] Ordinance is arbitrary, capricious, and/or unreasonable, and therefore, void *ab initio;*

(*l* ) ... [appellants] are entitled to, and the City shall pay, a reimbursement of water and sewer service fees from the City to [appellants], such amount being the difference between the amount charged to [appellants] under the [2004] Ordinance from December 1, 2004 until the date of the final judgment;

(m) ... this Court declare that [appellants] only have to pay water and sewer rates under the Prior Ordinance until further order from the Court or until such time that the [2004] Ordinance is lawfully amended in accordance with Texas law and other applicable law; and

(n) ... [appellants] are entitled to an award of attorneys' fees pursuant to Texas Civil Practice & Remedies Code § 37.009.

In their prayer for damages, appellants limited damages to reimbursement for surcharges. In another section of their petition, however, they referred to having "additionally suffered revenue losses, reductions in property values, and the loss of current and potential tenants, among other damages."

**4.** *See* Tex. Water Code Ann. §§ 13.042, .043 (Vernon 2008).

munity for claims for breach of contract.[5] Following an evidentiary hearing, the trial court granted the City's plea to the jurisdiction.

## II. LEGAL STANDARDS AND STANDARD OF REVIEW

In four issues, appellants challenge the trial court's order granting the City's plea to the jurisdiction.[6] In its plea, the City argued provisions of the Texas Water Code gave TCEQ exclusive appellate jurisdiction over the rate claims and governmental immunity precluded the remaining claims.

In a plea to the jurisdiction, a party challenges the trial court's authority to determine the subject matter of the cause of action. *City of Mont Belvieu v. Enter. Prod. Operating, L.P.*, 222 S.W.3d 515, 518 (Tex.App.-Houston [14th Dist] 2007, no pet.). Because subject matter jurisdiction is a question of law, we review the trial court's decision de novo. *Id.* In deciding a plea to the jurisdiction, we may not weigh the merits of the claim, but must consider only the plaintiff's pleadings and the evidence pertinent to the jurisdictional inquiry. *See Tex. Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 868 (Tex.2001); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554–55 (Tex.2000). When we consider a trial court's order on a plea to the jurisdiction, we construe the pleadings in the plaintiff's favor and look to the pleader's intent. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993). To prevail, the party asserting the plea must show that, even if all the allegations in the plaintiff's pleadings are taken as true, an incurable jurisdictional defect appears on the face of the pleadings, rendering it impossible for the plaintiff's petition to confer jurisdiction on the trial court. *City of Mont Belvieu*, 222 S.W.3d at 518.

If a plaintiff fails to plead sufficient facts affirmatively demonstrating the trial court's jurisdiction, but the pleadings do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004); *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex.2002). However, if the pleadings affirmatively negate the existence of jurisdiction, a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Miranda*, 133 S.W.3d at 227; *Brown*, 80 S.W.3d at 555. Also, through inaction, a plaintiff may lose the opportunity to amend. *See Haddix v. Am. Zurich Ins. Co.*, 253 S.W.3d 339, 347 (Tex.App.-Eastland 2008, no pet.).[7]

---

5. *See* Tex. Loc. Gov't Code Ann. §§ 271.151(2), .152 (Vernon 2005).

6. Specifically, appellants argue that (1) under the Texas Water Code, TCEQ does not have jurisdiction to review inside-city ratepayers' claims; (2) TCEQ does not have exclusive jurisdiction to review appellants' common law, breach of contract, and declaratory judgment claims; (3) appellants have the right to recover unlawful water and sewer fees and attorney's fees if the ordinance is declared void ab initio; and (4) the trial court has jurisdiction to enforce the settlement agree-

ment signed by Tara's counsel and counsel for the City.

7. If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex.2004). If the evidence creates a fact question regarding the jurisdictional issue, then the plea to the jurisdiction must be denied. *Id.* at 227–28. If the evidence is undisputed or fails to raise a fact question on the jurisdictional issue, then the trial court rules on the plea to the jurisdic-

### III. Appellants' Claims and the City's Plea

#### A. *Appellants' Rate Claims and the Texas Water Code*

In their first issue, appellants argue the trial court erred in dismissing their rate claims. Appellants' first three causes of action against the City were cast as (1) "Unlawful and Unconstitutional Taxation in Violation of Texas Law," (2) "Unreasonable and Unjustified Rate Discrimination" under Texas common law, and (3) "Arbitrary and Unreasonable Rates" under Texas common law. In each of these "causes of action," appellants attacked the increase in rates resulting from passage of the 2004 ordinance. Appellants alleged the increased rates were not related to the City's costs in providing service, were excessive in comparison to charges for other customers, and were not based on evidence or analysis. Appellants' sixth cause of action was a request for a declaration incorporating appellants' allegations in the first three causes of action, as well as seeking declarations (1) they were entitled to reimbursement for past payment and (2) the settlement agreement signed by counsel for Tara and the City was enforceable.

In its plea to the jurisdiction, the City argued, in part, that appellants' lawsuit was "essentially a challenge to the rates that the City charges for utility services." Citing Texas Water Code section 13.042(d), the City then contended the TCEQ had exclusive appellate jurisdiction over that dispute and therefore the district court lacked jurisdiction.

■ Texas district courts are courts of general jurisdiction and have jurisdiction over all actions, proceedings and remedies "except in cases where exclusive, appellate, or original jurisdiction may be conferred by [the Texas] Constitution or other law on some other court, tribunal, or administrative body." Tex. Const. Art. V, § 8. An agency has exclusive jurisdiction when a pervasive regulatory scheme indicates that the legislature intended for the regulatory process to be the exclusive means of remedying the problem to which the regulation is addressed. *In re Entergy Corp.,* 142 S.W.3d 316, 322 (Tex.2004).

■ The question in the present case, therefore, is whether the legislature intended the regulatory process as the exclusive means of remedying a rate dispute between a municipally owned water and sewer utility and ratepayers living within the corporate limits of that municipality. We conclude it did not.

Water Code section 13.042 provides for a municipality's original jurisdiction and for TCEQ's original and appellate jurisdiction:

(a) Subject to the limitations imposed in this chapter and for the purpose of regulating rates and services so that those rates may be fair, just, and reasonable and the services adequate and efficient, the governing body of each municipality has exclusive original jurisdiction over all water and sewer utility rates, operations, and services provided by a water and sewer utility within its corporate limits.

(b) The governing body of a municipality by ordinance may elect to have the commission exercise exclusive original jurisdiction over the utility rates, operation, and services of utilities, within the incorporated limits of the municipality.

(c) The governing body of a municipality that surrenders its jurisdiction to

tion as a matter of law. *Id.* at 228. As our concurring colleague observes, however, the

City, in its plea to the jurisdiction, challenged appellants' pleadings.

the commission may reinstate its jurisdiction by ordinance at any time after the second anniversary of the date on which the municipality surrendered its jurisdiction to the commission, except that the municipality may not reinstate its jurisdiction during the pendency of a rate proceeding before the commission. The municipality may not surrender its jurisdiction again until the second anniversary of the date on which the municipality reinstates jurisdiction.

(d) The commission shall have exclusive appellate jurisdiction to review orders or ordinances of those municipalities as provided in this chapter.

(e) The commission shall have exclusive original jurisdiction over water and sewer utility rates, operations, and services not within the incorporated limits of a municipality exercising exclusive original jurisdiction over those rates, operations, and services as provided in this chapter.

(f) This subchapter does not give the commission power or jurisdiction to regulate or supervise the rates or service of a utility owned and operated by a municipality, directly or through a municipally owned corporation, within its corporate limits or to affect or limit the power, jurisdiction, or duties of a municipality that regulates land and supervises water and sewer utilities within its corporate limits, except as provided by this code. Tex. Water Code Ann. § 13.042. In addition, Water Code section 13.043(b)(3) provides that ratepayers residing outside the corporate limits of a municipality "may appeal the decision of the governing body of the entity affecting their water, drainage, or sewer rates to the commission." *Id.* § 13.043(b).

Our ultimate goal in construing a statute is to give effect to the legislature's intent as expressed in the language of the statute. *F.F.P. Operating Partners, L.P. v. Duenez,* 237 S.W.3d 680, 683 (Tex. 2007); *Horizon/CMS Healthcare Corp. v. Auld,* 34 S.W.3d 887, 892 (Tex.2000). In doing so, we must always consider the statute as a whole rather than its isolated provisions. *Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 493 (Tex.2001). "We should not give one provision a meaning out of harmony or inconsistent with other provisions, although it might be susceptible to such a construction standing alone." *Id.* Instead, we presume that both the statute and the legislative act are intended to be effective in their entirety. *Allegheny Mut. Cas. v. State,* 710 S.W.2d 139, 141 (Tex.App.-Houston [14th Dist.] 1986, pet. ref'd). Thus, in construing a statute— regardless of whether it is ambiguous on its face—we may consider, among other matters, the following: the object sought to be attained; the circumstances under which the statute was enacted; common law or former statutory provisions, including laws on the same or similar subjects; and the consequences of a particular construction. *See* Tex. Gov't Code Ann. § 311.023 (Vernon 2005).[8]

In arguing TCEQ has exclusive jurisdiction over appellants' rate claims, the City relies primarily on Water Code subsection 13.042(d). Unlike subsections (a), (b), and (e), however, subsection (d) contains no reference to "rates." *See* Tex. Water Code Ann. § 13.042(a), (b), (d), (e). Instead, subsection (d) grants the commission exclusive appellate jurisdiction to "review orders or ordinances." *Id.* (d). Additionally, to interpret subsection (d) as

---

**8.** The Code Construction Act applies to construction of the Water Code. *See* Tex. Water Code Ann. § 1.002(a) (Vernon 2008).

granting TCEQ exclusive appellate jurisdiction over rate decisions by the governing bodies of municipally owned water and sewer utilities would render superfluous the section which permits non-resident ratepayers to appeal to TCEQ a "decision of the governing body of the entity affecting their water, drainage, or sewer rates." *Id.* § 13.043(b)(3); *see F.F.P. Operating Partners, L.P.*, 237 S.W.3d at 711 (acknowledging fundamental rule that court must give effect to every sentence, clause, and word of a statute so no part will be rendered superfluous).

Finally, subsection 13.042(f) specifically cautions that the Water Code subchapter relating to jurisdiction "does not give [TCEQ] power or jurisdiction to regulate or supervise the rates or service of a utility owned and operated by a municipality . . . . except as provided by this code." Tex. Water Code Ann. § 13.043(f). This limitation is consistent with the legislative history of public utility regulation in Texas, which "represents an attempt to retain local regulation of public utilities while empowering the Commission to regulate regional service or service outside municipal limits." *Pub. Util. Comm'n v. City of Austin*, 728 S.W.2d 907, 913 (Tex.App.-Austin 1987, writ ref'd n.r.e.); *see also City of Sherman v. Pub. Util. Comm'n*, 643 S.W.2d 681, 683 (Tex.1983) (describing municipalities' opposition to state regula-

tion of municipally owned utilities and explaining statutory compromise of retaining municipal regulation within a municipality's territorial boundaries and exempting municipalities from most of the statute's regulatory provisions).[9]

Based on the plain language of the Texas Water Code and the history of predecessor statutes, we conclude the Texas Water Code does not confer exclusive appellate jurisdiction over the rates charged by a municipally owned utility to ratepayers residing within its territorial boundaries. *See City of W. Tawakoni v. Williams*, 742 S.W.2d 489, 490–91, 493 & 493 n. 2 (Tex.App.-Dallas 1987, writ denied) (indicating same in relation to predecessor of present Water Code).

The City, however, relies on the following cases, in which courts construed section 13.042(d) as vesting TCEQ with exclusive appellate jurisdiction over the claims in question: *City of Galveston v. Flagship Hotel, Ltd.*, 73 S.W.3d 422 (Tex.App.-Houston [1st Dist.] 2002, no pet.) ("*Flagship I*"); *Flagship Hotel, Ltd. v. City of Galveston*, 117 S.W.3d 552 (Tex.App.-Texarkana 2003, pet. denied) ("*Flagship II*"); and *City of Donna v. Victoria Palms Resort, Inc.*, No. 13–03–375–CV, 2005 WL 1831593 (Tex.App.-Corpus Christi Aug. 4, 2005, pet. denied) (mem.op.).[10] In these

**9.** The *City of Sherman* and *City of Austin* courts were construing the Public Utilities Regulatory Act of 1975. *See City of Sherman v. Pub. Util. Comm'n*, 643 S.W.2d 681, 683 (Tex.1983); *Pub. Util. Comm'n v. City of Austin*, 728 S.W.2d 907, 912–13 (Tex.App.-Austin 1987, writ ref'd n.r.e.). The Water Code provisions at issue in the present case retain much of the language of that act. *See* Act of June 2, 1975, 64th Leg. R.S., ch. 721, §§ 17, 20, 26, 1975 Tex. Gen. Laws 2327, 2334–37. Compare Tex. Water Code §§ 13.042(a)-(e), .042(f), .043, respectively.

**10.** The City also cites *City of Willow Park v. Squaw Creek Downs, L.P.*, 166 S.W.3d 336, 340 (Tex.App.-Fort Worth 2005, no pet.). The *Squaw Creek Downs* court held the trial court had jurisdiction over a presuit discovery petition and affirmed the trial court's order denying the city's plea to the jurisdiction. *Id.* at 338. In passing, the court observed, "[T]he water code confers exclusive original jurisdiction over water service disputes to the municipality and exclusive appellate jurisdiction over such disputes to the Commission." *Id.* at 340 (citing *Galveston v. Flagship Hotel, Ltd.*, 73 S.W.3d 422, 427 (Tex.App.-Houston [1st Dist] 2002, no pet.)).

cases, however, courts were either not reviewing rates or provided only minimal reasoning in support of their conclusions.

In *Flagship I*, the issue was whether the district court had jurisdiction to issue a temporary injunction to prevent cessation of water service to a hotel because of the hotel's alleged arrearage in payment of its water bills. 73 S.W.3d at 423–24. The court quoted sections 13.042(a) and (d). *Id.* at 426. It then quoted the definition of an "order": "An 'order' of a municipality is 'the whole or part of the final disposition, whether affirmative, negative, injunctive, or declaratory in form, of the regulatory authority in a matter other than rulemaking....'" *Id.* (quoting Tex. Water Code Ann. § 13.002(14)). Without further analysis of section 13.042 or other provisions of the code, the court then concluded "exclusive original jurisdiction over the City's decision to shut off Flagship's water is vested with the City. Further, we conclude exclusive appellate jurisdiction over the City's final disposition of this dispute is vested with the TNRCC." *Id.* at 427.[11]

The court next rejected the hotel's contention that, under section 13.042(f), TNRCC (now TCEQ) had no power to reverse a decision by the city to shut off the hotel's water. *Id.*[12] In quoting the section, the court emphasized the last phrase (*"except as provided by this code"*) and then observed that section 13.042(f) "merely limits the power of the TNRCC to enforce the legislative purpose of the Water Code 'to assure rates, operations, and services that are just and reasonable to the consumers and to the retail public utilities.'" *Id.* (quoting Tex. Water Code Ann. § 13.042(f)). Although the hotel had

claimed breach of contract and sought declaratory relief, the appellate court specifically limited its jurisdictional holding to the hotel's request for injunctive relief. *Id.* at 423–24, 428.

In *Flagship II*, on appeal after remand of *Flagship I*, one issue was whether the district court erred in granting the city's plea to the jurisdiction over Flagship's claim for declaratory relief requesting a judgment that its alleged water and sewer arrearage was barred by the statute of limitations and agreements between the city manager and Flagship. *Flagship II*, 117 S.W.3d at 562–63. Without discussion, the *Flagship II* court found the *Flagship I* court's reasoning "persuasive," and held "Flagship must exhaust its administrative remedies through the Texas Commission on Environmental Quality, formerly the TNRCC." *Id.* at 563.

Finally, in *City of Donna*, Victoria Palms sued the city over its refusal to credit an amount of alleged water overcharges and its threat to disconnect water service. 2005 WL 1831593, at *3. The appellate court reasoned:

> The City's refusal to credit Victoria Palms with the amount of alleged overcharges constitutes a whole or part of a final disposition of the City, other than rulemaking; that decision therefore constitutes an order under the water code. [Tex. Water Code Ann. § ] 13.002(14). The TCEQ has exclusive appellate jurisdiction to review orders or ordinances of the City. *See id.* at § 13.042(d).

*Id.* at *4. The court also relied on *Flagship I*, referring to its conclusion that the pre-

---

11. The City had apparently conceded the commission's appellate jurisdiction. *See City of Galveston v. Flagship Hotel, Ltd.*, 73 S.W.3d 422, 427 (Tex.App.-Houston [1st Dist.] 2002, no pet.).

12. In 2001, the Texas Natural Resources Commission (TNRCC) was renamed the Texas Commission on Environmental Quality. Act of May 28, 2001, 77th Leg., R.S., ch. 965, § 18.01, 2001 Tex. Gen. Laws 1933, 1985.

decessor to TCEQ had exclusive appellate jurisdiction over the city's final disposition of a dispute with a hotel over discontinuing water service for nonpayment of fees. *Id.* (citing *Flagship I*, 73 S.W.3d at 427).

We do not find *Flagship I* and *II* and *City of Donna* persuasive authority for the present case because they either do not involve review of rates or contain only minimal reasoning in support of their results. Instead, for the reasons discussed above, we conclude the legislature has not conferred exclusive appellate jurisdiction on TCEQ over water and sewer rates a municipally owned water and sewer utility charges ratepayers residing within its corporate limits. Accordingly, we hold the district court has jurisdiction over appellants' Water Code claims. *See* Tex. Const. Art. V, § 8 (granting district courts general jurisdiction unless exclusive, appellate, or original jurisdiction conferred on other entity).

We therefore sustain appellants' first issue in part. We reverse the district court's dismissal of appellants' first three claims in their third amended petition and dismissal of appellants' claim for declaratory judgment (sixth claim) insofar as appellants requested a declaration regarding rates, but not insofar as they requested a declaration regarding reimbursement for past amounts paid or enforceability of the settlement agreement.

## B. *Appellants' Common Law, Breach of Contract, and Declaratory Judgment Claims*

In issue two, appellants argue the trial court erred in dismissing their "common law and breach of contract claims" because they fall outside the purview of TCEQ's exclusive jurisdiction. Appellants first refer to their "several common law claims for unlawful and unconstitutional taxation, unreasonable and unjustified rate discrimina-

tion, and arbitrary and unreasonable water and sewer rates, as well as numerous requests for declaratory judgment." As discussed in Section III. A., above, these causes of action are, in essence, attacks on the increase in rates resulting from passage of the 2004 ordinance; and we have concluded the district court has jurisdiction over these claims.

In issue two, appellants also refer to Tara's claims for breach of contract and promissory estoppel. We discuss those claims in Section III. D., below, in response to appellants' fourth issue. Because of our resolution of appellants' first and fourth issues, we do not discuss their second issue.

## C. *Appellants' Claims for Equitable Relief and Attorneys' Fees*

In issue three, appellants argue, if the ordinance is declared void ab initio, they have a right to recover unlawful water and sewer fees and attorneys' fees. Under this issue, appellants contend (1) the City is not immune from suits for equitable relief, (2) appellants should be allowed to seek reimbursement of the surcharges already paid pursuant to the Water Code's requirement that the City have just and reasonable rates, (3) the trial court has jurisdiction to order reimbursement under the Uniform Declaratory Judgment Act ("UDJA"), (4) it would be against public policy for the City to receive a windfall, and (5) the UDJA waives governmental immunity for attorneys' fees. In short, in issue three, appellants focus on the monetary awards they seek (1) for previously paid water and sewer fees and (2) for attorneys' fees.

The City responds by invoking governmental immunity. The City observes that, despite having filed their third amended petition after the City filed its plea to the jurisdiction, appellants did not allege waiv-

er of governmental immunity. More specifically, the City argues that appellants "have yet to plead a legislative waiver of the City's immunity to a common law claim for monetary or equitable relief." [13]

 In Texas, sovereign immunity protects the state against lawsuits for damages unless the state has consented to suit. *See Miranda,* 133 S.W.3d at 224. Cities, as political subdivisions of the state, are entitled to immunity unless it has been waived. *See San Antonio Indep. Sch. Dist. v. McKinney,* 936 S.W.2d 279, 283 (Tex.1996). Sovereign immunity encompasses two distinct principles: immunity from suit and immunity from liability. *Miranda,* 133 S.W.3d at 224.[14] Although immunity from liability is an affirmative defense, immunity from suit deprives a court of subject matter jurisdiction. *Id.* Because immunity from suit, unlike immunity from liability, affects the court's jurisdiction, immunity from suit is properly raised in a plea to the jurisdiction. *See*

*Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 696 (Tex.2003).

 *Money had and received.* Appellants rest their claim for monetary damages primarily on the equitable doctrine of money had and received.[15] As the First Court of Appeals recently explained:

> [W]here a claim for declaratory or injunctive relief is brought seeking the refund of illegally collected tax payments, governmental immunity will not apply if the taxpayer alleges that the payments were made as a result of fraud, mutual mistake of fact, or duress, whether express or implied. *See Dallas County Cmty. College Dist. v. Bolton,* 185 S.W.3d 868, 876–79 (Tex.2005) (holding that a taxpayer cannot bring a suit for the return of illegally collected taxes if the payments were made voluntarily); *see also Camacho v. Samaniego,* 954 S.W.2d 811, 822 (Tex.App.-El Paso 1997,

**13.** In its plea to the jurisdiction, the City invoked governmental immunity only insofar as appellants were seeking monetary damages and Tara was seeking breach of contract damages related to the purported settlement agreement. To defeat appellants' other claims, the City relied on its assertion that the Water Code vested exclusive jurisdiction in the TCEQ.

**14.** Often, courts use the terms "sovereign immunity" and "governmental immunity" interchangeably. *Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 694 n. 3 (Tex.2003). They are, however, two distinct concepts. *Id.* "Sovereign immunity" refers to a State's immunity from suit and liability. *Id.* Its protection extends not only to the State, but also to the varying divisions of state government, including agencies, boards, hospitals, and universities. *Id.* "Governmental immunity" protects political subdivisions of the State, including counties, cities, and school districts. *Id.*

**15.** They also contend they should be allowed to recover under the Water Code requirement

that rates be just and reasonable and it would be against public policy to allow the City a windfall. In support of the first contention, they rely solely on *Texas Natural Resource Conservation Commission v. Lakeshore Utility Co.,* 164 S.W.3d 368, 377–79 (Tex.2005). *Lakeshore Utility* was an enforcement action brought by TCEQ's predecessor against a non-municipally owned utility, and the court did not address the issue of governmental immunity. *See id.* at 369–70 & 370 n. 2. In support of the second contention, appellants rely solely on *City of Port Isabel v. Pinnell,* 207 S.W.3d 394, 398, 406–07 (Tex.App.-Corpus Christi 2006, no pet.). *Pinnell* involved a declaratory judgment and injunctive relief. *See id.* at 398. The appellate court affirmed the trial court's judgment that certain city ordinances were void. *Id.* at 398, 406–08. Although the trial court awarded attorneys' fees, *Pinnell* did not involve an award of monetary damages resulting from enactment of the void ordinances, and governmental immunity was not an issue. *See id.* at 401. *Lakeshore* and *Pinnell* do not support the trial court's jurisdiction over an action for monetary damages against the City.

pet. denied). The revenue generated from a tax determined to be illegal should not be treated as property of the State or municipality to which the principles of sovereign immunity apply, and an illegally collected fee should be refunded if paid as a result of fraud, mutual mistake of fact, or duress, without respect to waiver of sovereign immunity. *See Camacho,* 954 S.W.2d at 822; *Austin Nat'l Bank of Austin v. Sheppard,* 123 Tex. 272, 71 S.W.2d 242, 246 (1934). No legislative consent to sue is needed under these circumstances.

*Nivens v. City of League City,* 245 S.W.3d 470, 474 (Tex.App.-Houston [1st Dist.] 2007, pet. denied).

In *Nivens,* taxpayers asserted claims for money had and received, breach of contract, and mistake, but had not sought declaratory or injunctive relief regarding levy and refund of allegedly illegal municipal utility district taxes. *Id.* at 475. The taxpayers also did not allege they made any payments as a result of fraud, mutual mistake of fact, or duress. *Id.* The appellate court held appellants' claims were barred by governmental immunity. *Id.*

■ Appellants in the present case argue they alleged duress as follows: "Since December 1, 2004, under the [2004] Ordinance, Plaintiffs have been forced to pay arbitrary, unreasonable, excessive, confiscatory, and discriminatory charges for water and sewer service." They further request this court to take judicial notice of provisions in the City's Code of Ordinances, under which the City is authorized to impose late payment charges and discontinue water service for delinquent accounts. Appellants now contend they would be subject to "punishment" under these provisions. *See Dallas County Comm. College Dist. v. Bolton,* 185 S.W.3d 868, 877 (Tex.2005) (stating reimbursement of illegal fees and taxes allowed when pub-

lic entity compels compliance with void law and subjects person to punishment if he refuses or fails to comply).

Despite having included multiple paragraphs setting forth specific facts related to the enactment and effects of the 2004 Ordinance, appellants never pleaded the potential for penalties of late payment charges and cessation of water service. They never characterized late charges and cessation of water as "punishment" or duress. Their reference to being "forced" to pay the 2004 water and sewer charges appears in a paragraph completely separate from their jurisdictional paragraphs.

Even construing appellants' pleadings liberally, we conclude that, like the taxpayers in *Nivens,* appellants did not allege facts indicating they made water and sewer payments as a result of fraud, mutual mistake of fact, or duress. *Nivens,* 245 S.W.3d at 475. Just as were the taxpayers' claims in *Nivens,* appellants' claims in the present case are barred by governmental immunity. *See id.*

■ Appellants, however, contend that, if they have not pleaded sufficient facts to allege a claim for money had and received, they should be allowed to amend their petition. *See Hull v. Davis,* 211 S.W.3d 461, 463 (Tex.App.-Houston [14th Dist.] 2006, no pet.) (stating when plaintiff fails to plead facts establishing jurisdiction, but petition does not affirmatively demonstrate incurable defects in jurisdiction, issue is one of pleading sufficiency, and plaintiff should be afforded the opportunity to amend). We note that appellants amended their petition after the City filed its plea to the jurisdiction but did not include facts or allegations that pertain to late fees and cessation of service. However, we acknowledge that appellants' pleadings do not affirmatively negate the trial court's jurisdiction over their money had

and received claim. After the trial court granted the City's plea to the jurisdiction, appellants did not seek or request an opportunity for another amendment to their petition. *See Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839–40 (Tex. 2007) (indicating plaintiff should be given opportunity to amend after a trial court finds merit in a plea to the jurisdiction).

Although the general rule reflects a preference for allowing amendment, a plaintiff may forfeit this opportunity through inaction. *Haddix*, 253 S.W.3d at 347. By failing to seek permission to amend after the trial court found the City's plea meritorious, appellants forfeited the opportunity to amend while this case was pending in the trial court. *See id.; see also Dahl ex rel. Dahl v. State*, 92 S.W.3d 856, 862 n. 6 (Tex.App.-Houston [14th Dist.] 2002, no pet.) (noting plaintiffs arguably waived complaint that trial court failed to provide them opportunity to amend pleadings when they did not seek leave to amend).[16]

■■■■ *Monetary damages under the UDJA.* As part of issue four, appellants contend the district court had jurisdiction to order reimbursement under UDJA section 37.011. Section 37.011 provides in relevant part: "Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application must be by petition to a court having jurisdiction to grant the relief." Tex. Civ. Prac. & Rem.Code Ann. § 37.011 (Vernon 2008). As appellants admit, "further relief" under section 37.011 is typically injunctive relief. *See State v. Anderson Courier Serv.*, 222 S.W.3d 62, 66 (Tex.App.-Austin 2005, pet. denied) ("Typi-

cally, further relief under section 37.011 is granted in the form of an injunction for the purpose of enforcing a declaratory judgment where the evidence shows that a party will not comply with the judgment."). Private parties cannot circumvent governmental immunity by characterizing a suit for money damages as a declaratory-judgment claim. *City of Houston v. Williams*, 216 S.W.3d 827, 828–29 (Tex.2007).

■■■■ *Attorneys' fees under the UDJA.* Finally, appellants argue the UDJA waives governmental immunity for an award of attorneys' fees. We agree. *See Tex. Educ. Agency v. Leeper*, 893 S.W.2d 432, 446 (Tex.1994) (concluding that, by authorizing declaratory judgment actions to construe legislative enactments of governmental entities and authorizing awards of attorney fees, UDJA necessarily waives governmental immunity for such awards). That the UDJA waives immunity for attorneys' fees awards, however, does not mean it waives immunity for damages awards.

We overrule appellants' third issue to the extent it relates to the district court's jurisdiction over claims for monetary damages. We sustain appellants' third issue only to extent it relates to the district court's jurisdiction over an award of attorneys' fees if such an award is warranted.

### D. Breach of Contract and Promissory Estoppel Based on the Settlement Agreement

In issue four, Tara argues that the district court had jurisdiction to enforce the "settlement agreement" (an undated handwritten "resolution" signed by appellants'

---

16. We note that the City does not dispute the form or substance of the trial court's order granting its jurisdictional plea and dismissing appellant's lawsuit without prejudice. Ac-

cordingly, we confine our disposition to the judgment rendered. *See* Tex.R.App. P. 25.1(c) (stating, except for just cause, appellate court may not grant party who does not file notice

counsel and the City's counsel) which purportedly arose from the proceedings before TCEQ. Tara initially contends the trial court has jurisdiction because the agreement arose from a forum where liability had been waived.

In support, appellants cite *Texas A & M University–Kingsville v. Lawson*, 87 S.W.3d 518, 521 (Tex.2002) (plurality op.). Writing for the plurality in *Lawson*, Justice Hecht observed, "[W]hen a governmental entity is exposed to suit because of a waiver of immunity, it cannot nullify that waiver by settling the claim with an agreement on which it cannot be sued." *Id.*

The City responds that no settlement agreement exists because the city council never authorized the resolution, and therefore statutory provisions allowing for adjudication of claims arising under written contract with local governmental units do not apply.[17] Under Texas Local Government Code section 271.152, a local governmental entity authorized by statute or constitution to enter into contract, and which enters into a contract subject to the subchapter, waives sovereign immunity to suit for purpose of adjudicating a claim for breach of the contract. Tex. Loc. Gov't Code Ann. § 271.152 (Vernon 2005). A contract subject to the subchapter is "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is **properly executed on behalf of the local governmental entity**" (emphasis added). *Id.* § .151(2).

Tara relies solely on the handwritten "resolution" executed by its counsel and counsel for the City. As an initial matter, we note the following language in that document: "Now therefore be it re-

solved by The City Council...." At the hearing on the plea to the jurisdiction, City Secretary Maria Vega testified she had searched the City's records back to 2004 and had not found the handwritten resolution. Neither had she found any record of the City's having adopted or authorized the resolution. She had attended all the city council meetings for "the last couple of years" and was not aware of the city council's having authorized such a resolution. The resolution was not in a form that she would present or execute for the City.

A city's governing body may not delegate the right to make decisions affecting the transaction of city business. *City of San Benito v. Rio Grande Valley Gas Co.*, 109 S.W.3d 750, 757 (Tex.2003). Although cities may delegate to others the right to perform acts and duties necessary to the transaction of the city's business, they can do so only by resolution or ordinance, by a majority vote. *Id.*

Thus, even if we assume the proceeding before the TCEQ was one in which the City's immunity had been waived, we cannot conclude the handwritten resolution constituted an agreement between Tara and the City. The plurality opinion in *Lawson* does not support a waiver of the City's immunity in the present case.

Tara also contends the district court has jurisdiction over its breach of contract and equitable estoppel claims under "*Federal Sign's* 'Equitable Waiver by Conduct' Exception" to governmental immunity. *See Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 408 n. 1 (Tex.1997) (stating there may be circumstances when "the State may waive its immunity by conduct other than simply executing a contract so that it is not always immune from suit when it con-

of appeal more favorable relief than the trial court).

**17.** The City further responds that the doctrine of promissory estoppel generally does not ap-

ply to a governmental unit exercising its public or governmental functions. *See City of Hutchins v. Prasifka*, 450 S.W.2d 829, 835 (Tex.1970).

tracts"). Tara specifically directs this court's attention to *Texas Southern University v. State Street Bank & Trust,* 212 S.W.3d 893 (Tex.App.-Houston [1st Dist.] 2007, pets. denied).[18]

In *State Street Bank* the First Court of Appeals held, because of the extraordinary factual circumstances of the case, the State was not immune from suit. *Id.* at 907–08. In that case, Texas Southern University had entered into a contract for equipment and services. *Id.* at 908. After receiving approximately $13 million in equipment and services, the university refused to pay, claiming the contracts were invalid. *Id.* Additionally, one of the plaintiffs argued that the injustice was even worse than the facts found by the trial court because the case also included an additional fact not appearing in any of the prior cases: " 'The government officials lured [plaintiff] into the Master Lease with false promises that the contract would be valid and enforceable, then disclaimed any obligation on the contract by taking the position that the contract was not valid after all.' " *Id.*

 In neither its pleadings nor its responses to the City's plea to the jurisdiction, did Tara allege it was "lured" or misled in relation to the handwritten resolution.[19] By law, such a "resolution" would not be binding on the City until passed by a majority vote at a duly assembled meeting. *See City of San Benito,* 109 S.W.3d at 757. Tara was charged with notice of

the limits of the authority of the City's counsel. *See State v. Ragland Clinic–Hospital,* 138 Tex. 393, 159 S.W.2d 105, 107 (1942) (stating, in context of suit against state, that because powers of all state officers are fixed by law, all persons dealing with them are charged with notice of the limits of their authority and are bound at their peril to ascertain whether contemplated contract is within power conferred). The circumstances of the present case do not rise to the level of the "extraordinary factual circumstances" in *State Street Bank.*

We overrule Tara's fourth issue.

## IV. CONCLUSION

We conclude that the trial court had jurisdiction over appellants' claims disputing imposition of fees under the Water Code. Accordingly, we reverse that part of the trial court's order that dismissed appellants' claims disputing imposition of fees under the Water Code and remand for further proceedings consistent with our opinion.

We further conclude that the averments and allegations in appellants' Third Amended Petition are insufficient to support the trial court's jurisdiction over appellants' claims for reimbursement of previously paid fees and Tara's claims pertaining to breach of a purported settlement agreement. Accordingly, we affirm that part of the trial court's order

---

18. Tara also directs our attention to *Catalina Development, Inc. v. County of El Paso,* 121 S.W.3d 704 (Tex.2003). In *Catalina Development,* the supreme court held the county, by its conduct, had not waived immunity from suit. *Id.* at 704.

19. Tara contends, for the first time on appeal, that it was "lured into entering into this agreement by the false promises of the City attorney and its litigation counsel." In the trial court, Tara argued only that counsel for both sides had signed the document and a

fact question existed regarding whether there was any order or resolution granting the City's attorneys general or specific authority to bind the City. Tara then conceded it still had time to conduct discovery on that issue and informed the court "if we discover through the discovery process pursuant to a continuance that there really is no evidence on the issues that we needed some discovery on, then we'll rest on the arguments that we have made today as well as the evidence."

dismissing appellants' claims for reimbursement of previously paid fees and Tara's claim that the City breached a purported settlement agreement.

FROST, J., concurring.

KEM THOMPSON FROST, Justice, concurring.

The majority reaches the correct judgment. However, I respectfully disagree with some of the majority's analysis under the first issue, as discussed below.

### Standard of Review

We review a trial court's ruling on a plea to the jurisdiction de novo. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex.2004). In discussing the standard of review, the majority does not distinguish clearly between pleas to the jurisdiction in which the defendant challenges the pleadings and pleas to the jurisdiction in which the defendant challenges the existence of jurisdictional facts.[1]

When a party has filed a plea to the jurisdiction challenging the pleadings, a reviewing court must construe the pleadings liberally in favor of the pleader and look to the pleader's intent. *See Miranda,* 133 S.W.3d at 226. If the facts alleged affirmatively demonstrate the trial court's jurisdiction to hear the cause, the plea to the jurisdiction must be denied. *See id.* If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction, but do not affirmatively demonstrate incurable defects in the jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend. *See id.* If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allow-ing an opportunity to amend. *See id.* at 227.

If in its plea to the jurisdiction a party challenges the existence of jurisdictional facts, the reviewing court considers relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do. *See id.* If the evidence creates a fact question regarding the jurisdictional issue, then the plea to the jurisdiction must be denied. *See id.* at 227–28. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, then the court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228. In ruling on a plea to the jurisdiction, a court does not consider the merits of the parties' claims. *See id.* at 226–28; *County of Cameron v. Brown,* 80 S.W.3d 549, 555 (Tex.2002). In its plea to the jurisdiction, appellee The City of South Houston (the "City") challenged the pleadings of appellants Tara Partners, Ltd., Granada Terrace, Ltd., David R. Wise, 1606 Savannah LLC, Windsor Gardens, Ltd., and Freeport Villa Brazos Apartments, Ltd. (collectively "Ratepayers").

### The Commission does not have exclusive appellate jurisdiction.

As to the first issue, the majority correctly concludes that the legislature has not conferred exclusive appellate jurisdiction on the Texas Commission on Environmental Quality (the "Commission") over water and sewer rates a municipally-owned water and sewer utility charges ratepayers residing within its corporate limits. However, the "orders or ordinances" language of section 13.042(d) and the language of section 13.042(f) are not

---

1. *See ante* at p. 570.

helpful in this analysis.[2] Rather, under section 13.042(d), the Commission has "exclusive appellate jurisdiction ... as provided in this chapter." *See* Tex. Water Code Ann. § 13.042(d) (Vernon 2008). Under this section's unambiguous language, the legislature did not confer any appellate jurisdiction on the Commission in this section; rather, the legislature introduced the concept of appellate jurisdiction and referred to other parts of Chapter 13 of the Water Code, in which the legislature confers appellate jurisdiction on the Commission, for example, section 13.043(b). *See* Tex. Water Code Ann. § 13.043(b) (Vernon 2008). The majority correctly points out that the City's proffered construction of section 13.042(d) would make section 13.043(b) meaningless and unnecessary. Based on the plain language of the Texas Water Code, this statute does not confer exclusive appellate jurisdiction on the Commission over the rates charged by a municipally-owned utility to rate-payers residing within its territorial boundaries.

### Under the Texas Constitution, the district court has jurisdiction.

Under the Texas Constitution, "District Court jurisdiction consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body." Tex. Const. art. V, § 8. Under the Texas Water Code, the governing board of the City has exclusive original jurisdiction over all water and sewer utility rates, operations, and services provided by a water and sewer utility within its corporate limits. *See* Tex. Water Code Ann. § 13.042(a). However, no statute states that the gov-

erning board's decisions are not appealable and no statute confers appellate jurisdiction on the Commission or any other entity over the rates charged by a municipally-owned utility to rate-payers residing within its territorial boundaries. Therefore, under the Texas Constitution, district courts are vested with this appellate jurisdiction. *See* Tex. Const. art. V, § 8. For this reason, the district court has jurisdiction over the Ratepayers' first three claims in their third amended petition and over their claim for declaratory judgment (sixth claim) insofar as the Ratepayers request a declaration regarding rates, but not insofar as they request a declaration regarding reimbursement for past amounts paid or enforceability of the settlement agreement.

For the reasons stated in this opinion, I respectfully concur in the court's judgment.