COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-09-046-CV

 

 

THE TOWN OF DOUBLE OAK                                                 APPELLANT

 

                                                   V.

 

MICHAEL MCDANIEL                                                              APPELLEE

 

                                              ------------

 

            FROM THE 367TH
DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I. 
Introduction

In this interlocutory appeal,[2]
Appellant, the Town of Double Oak, complains that the trial court erred by
denying its plea to the jurisdiction because Appellee Michael McDaniel seeks
damages in his suit for declaratory judgment. 
We reverse and remand.








II. 
Background

McDaniel sued Double Oak for declarations that
Double Oak overcharged him for building permit fees and a sewer connection fee
and that he is therefore entitled to a refund of the overcharges.[3]  In its plea to the jurisdiction, Double Oak
argued that it had governmental immunity from these claims.  We address McDaniel=s
specific allegations in greater detail below.

III.  Plea
to the Jurisdiction

In its sole point, Double Oak argues that the
trial court erred by denying its plea to the jurisdiction.    

A.  Standard of Review

A party asserting governmental immunity to suit
challenges the trial court=s
jurisdiction.  Harris County Hosp.
Dist. v. Tomball Reg=l Hosp., 283
S.W.3d 838, 842 (Tex. 2009).  A plea
asserting such immunity involves a question of law that we review de novo.  Id. 









We focus first on the plaintiff=s
pleadings to determine whether the facts pleaded affirmatively demonstrate that
jurisdiction exists.  See City of El
Paso v. Heinrich, 284 S.W.3d 366, 378 (Tex. 2009); Wise Reg=l Health
Sys. v. Brittain, 268 S.W.3d 799, 804 (Tex. App.CFort
Worth 2008, no pet.).  The pleader has
the initial burden of alleging facts that affirmatively demonstrate the trial
court=s
jurisdiction to hear the case.  Wise
Reg=l Health Sys., 268
S.W.3d at 804 (citing Tex. Dep=t of
Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex.
2004)).  We construe the pleadings
liberally in favor of the plaintiff, looking to the pleader=s
intent.  Id.  If the pleadings are insufficient to
establish jurisdiction but do not affirmatively demonstrate an incurable defect
in jurisdiction, the plaintiff should be afforded the opportunity to amend.  Id. 


B.  Governmental Immunity








Governmental immunity protects political
subdivisions of the state from lawsuits for damages.  Harris County Hosp. Dist., 283 S.W.3d
at 842.  It encompasses two distinct
concepts:  (1) immunity from suit
(barring a lawsuit unless the legislature expressly gives its consent to suit)
and (2) immunity from liability (even if the legislature has expressly given
its consent to suit).  City of
Carrollton v. Singer, 232 S.W.3d 790, 795 (Tex. App.CFort
Worth 2007, pet. denied).  Immunity from
liability is an affirmative defense; immunity from suit deprives a court of
subject matter jurisdiction.  Id.;
see also Harris County Hosp. Dist., 283 S.W.3d at 842 (stating that
immunity from suit is jurisdictional and bars suit; immunity from liability is
not jurisdictional and protects from judgments).  Governmental immunity from suit generally
protects the State=s subdivisions from lawsuits for
damages absent legislative consent to suit through a statute or express
legislative permission.  See Tex. Dep=t of
Transp. v. Jones, 8 S.W.3d 636, 638 (Tex. 1999); Rylander v.
Caldwell, 23 S.W.3d 132, 135 (Tex. App.CAustin
2000, no pet.) (citing Fed. Sign v. Tex. S. Univ., 951 S.W.2d 401, 405
(Tex. 1997)). 

C.  McDaniel=s
Pleadings

In his original and subsequent petitions,
McDaniel claims that he is entitled to equitable declarations that Double Oak
(1) Aovercharged
[him] for his pro rata share of the sewer lines and that [he] is entitled to a
refund of the overcharged amount,@ and (2)
Aovercharged
[him] for his building permit fees by more than $36,930.00 and [Double Oak] is
required to refund the amounts improperly charged.@ 








In support of his sewer connection fee overcharge
claim, McDaniel alleges the following: 
that he purchased land from Crossroads Bible Church (ACBC@) to
develop a self-storage facility; that because CBC had already installed
municipal sewer lines, at a cost of $77,550, McDaniel agreed to pay a pro-rata
share of the installation costs; and that Double Oak should have invoiced him
for his connection to the sewer lines pursuant to an ordinance and a pro-rata
agreement with CBC, with the ordinance providing that Double Oak would collect
the pro-rata share to be refunded to CBC ($38,775), less ten percent for Double
Oak=s
administrative costs.[4]  McDaniel complains that Double Oak instead added
ten percent to the $38,775, for a total invoiced cost of $42,649.49.  He states that when he attempted to explain
the miscalculation to Double Oak=s mayor,
the mayor refused to adjust the calculation and Aeffectively
told [McDaniel] just pay it because it was the right thing to do.@
McDaniel paid it Aso he could complete his
development on time.@ 








In support of his building permit fees overcharge
claim, McDaniel alleges that Double Oak invoiced him $48,855.50 for his Storage
Facility Building Permit, which itemized the building square footage permit fee
at $38,143.  He claims that Double Oak Aignored
the designations, use and facilities and charged [him] as if all four buildings
were commercial buildings ($38,775.00) rather than $.75 per square foot for the
commercial portion of Proposed Building #1 ($1,125.00) plus $180.00 for each
additional accessory building ($720.00), for the correct total building permit
fee of $1,845.00,@ effectively charging him
$36,930 more than it was entitled to charge.[5]  McDaniel complains that both invoices damaged
him financially, rendering him Aunable
to successfully operate his storage facility.@ 

D.  Analysis

McDaniel characterizes his pleadings as seeking
declaratory relief; Double Oak characterizes them as Aartifices
which, in truth, seek monetary damages.@ 








The Declaratory Judgments Act (ADJA@)
states, AA person
. . . whose rights, status, or other legal relations are affected by a . . .
municipal ordinance . . . may have determined any question of construction or
validity arising under the . . . ordinance . . . and obtain a declaration of
rights, status, or other legal relations thereunder.@  Tex. Civ. Prac. & Rem. Code Ann. '
37.004(a) (Vernon 2008).  The DJA
contains an express waiver of immunity, but only as to the declaration of
rights, not as to damages.  See id.
' 37.006(b)
(Vernon 2008) (AIn any proceeding that involves
the validity of a municipal ordinance or franchise, the municipality must be
made a party and is entitled to be heard[.]@); Tex.
Natural Res. Conservation Comm=n v. IT‑Davy, 74
S.W.3d 849, 856 (Tex. 2002) (stating that private parties cannot circumvent
immunity from suit by characterizing a suit for money damages as a declaratory
judgment claim).  Legislative consent to sue is not required for
a claim for declaratory relief seeking a refund of illegally collected fees if
the plaintiff alleges that the payments were made as a result of fraud, mutual
mistake of fact, or duress.  See Tara
Partners, Ltd. v. City of S. Houston, 282 S.W.3d 564, 576B77 (Tex.
App.CHouston
[14th Dist.] 2009, pet. filed) (citing Dallas County Cmty. Coll. Dist. v.
Bolton, 185 S.W.3d 868, 876B79 (Tex.
2005), and Camacho v. Samaniego, 954 S.W.2d 811, 822 (Tex. App.CEl Paso
1997, pet. denied)); see also Saturn Capital Corp. v. City of Houston,
246 S.W.3d 242, 245 (Tex. App.CHouston
[14th Dist.] 2007, pet. denied) (defining Afee@ as a
fixed charge or a charge for a service).













In his pleadings, McDaniel Aalleges
that he is entitled to an equitable declaration of his legal rights and
responsibilities under the subject Ordinances,@ and in
particular, that he is entitled to equitable declarations that he was
overcharged under both ordinances and that he is entitled to a refund of the
overcharged amounts.  On the record
before us, McDaniel=s request for declarations that
he is entitled to a refund of money appears to be fatal to jurisdiction because
retrospective monetary claims are generally barred by immunity.[6]  See Heinrich, 284 S.W.3d at 374B75; see also City of
Houston v. Williams, 216 S.W.3d 827, 829 (Tex. 2007) (A[I]n every suit
against a governmental entity for money damages, a court must first determine
the parties= contract or statutory rights; if the sole
purpose of such a declaration is to obtain a money judgment, immunity is not
waived.@); IT-Davy,
74 S.W.3d at 855 (stating that a litigant=s
request for declaratory relief does not change a suit=s
underlying nature); Humana Ins. Co. v. Tex. Health Ins. Risk Pool, 257
S.W.3d 402, 408, 411 (Tex. App.CCorpus
Christi 2008, no pet. h.) (holding that insurance company that filed
declaratory judgment suit claiming entitlement to a refund was seeking money
damages and not declaratory relief, so plea to the jurisdiction should have
been granted to the extent company=s claims
for declaratory relief sought damages); City of Dallas v. Blanton, 200
S.W.3d 266, 280 (Tex. App.CDallas
2006, no pet.) (holding that appellees= suit
for declaration that ordinance required city to pay expense of transferring
their plumbing and reconnecting it to new sewer main sought to impose liability
for damages prohibited by governmental immunity); cf. Hawkins v. El Paso
First Health Plans, Inc., 214 S.W.3d 709, 717B18, 725
(Tex. App.CAustin 2007, pet. denied)
(holding that the trial court correctly denied state agency=s plea
to the jurisdiction when appellees sued for declaration that agency acted
outside of its authority, for construction of the applicable statutes, and for
declaration of appellees= rights under the statutes;
appellees joined agency=s executive director in the suit
and expressly asserted that they were not seeking money damages from the
agency); Comptroller of Pub. Accounts of Tex. v. Waites, No. 01‑06‑00536‑CV,
2006 WL 3751565, at *3 (Tex. App.CHouston
[1st Dist.] Dec. 21, 2006, no pet.) (mem. op.) (holding that suit was not for
money damages and did not implicate sovereign immunity when plaintiff expressly
limited her suit solely to a determination of whether the officer who violated
her civil rights was entitled to indemnification by the State under civil
practice and remedies code chapter 104).













Furthermore, McDaniel does not allege express
legislative permission to sue, and his allegations that he paid the sewer
connection fee overcharge Aso he
could complete his development on time@ and
that he has been damaged financially by the Aover-inclusive
invoicing@ such that he cannot Asuccessfully
operate@ his
storage facility do not appear to rise to the level of duress.[7]  See Tex. Dep=t of
Transp., 8 S.W.3d at 638 (requiring legislative consent by statute or express
legislative permission); Saturn Capital Corp., 246 S.W.3d at 246
(describing duress necessary to authorize illegal fee recovery as Awhen the
unauthorized . . . fee is required, necessary, or shall be paid to avoid the
government=s ability to charge penalties or
halt a person from earning a living or operating a business@); see
also Dallas County Cmty. Coll. Dist., 185 S.W.3d at 877B79
(stating that the Texas Supreme Court has Aconsistently
recognized business compulsion arising from payment of government fees and
taxes coerced by financial penalties, loss of livelihood, or substantial damage
to a business,@ and that reimbursement of
illegal fees and taxes is allowed, in essence, when the public entity compels
compliance with a void law and subjects the person to punishment if he refuses
or fails to comply); Crow v. City of Corpus Christi, 146 Tex. 558, 562B63, 209
S.W.2d 922, 924B25 (1948) (discussing duress
with regard to cases in which businesses were faced with either paying illegal
fees or forfeiting their right to do business). 
McDaniel also does not allege that either of the overcharges resulted
from fraud or mutual mistake of fact.  See,
e.g., Nivens v. City of League City, 245 S.W.3d 470, 474B75 (Tex.
App.CHouston
[1st Dist.] 2007, pet. denied) (holding that the trial court did not err by
granting the city=s plea to the jurisdiction when
plaintiffs= pleadings failed to seek
declaratory or injunctive relief regarding refund of excessive tax payments and
failed to allege that they made any payments as a result of fraud, mutual
mistake of fact, or duress); see also Tara Partners, Ltd., 282 S.W.3d at
577 (holding that, even construed liberally, plaintiffs=
petition failed to allege facts indicating that they made payments as a result
of fraud, mistake of fact, or duress when they failed to plead the potential
for penalties or late payment charges and cessation of service).  Therefore, we sustain Double Oak=s sole
point.

 

 

 

 

 

 








IV. 
Conclusion

Sustaining Double Oak=s sole
point, we reverse the trial court=s denial
of Double Oak=s plea to the jurisdiction and
remand McDaniel=s declaratory judgment claims to
the trial court to afford McDaniel the opportunity to amend his pleadings.  See Tex. A & M Univ. Sys. v. Koseoglu,
233 S.W.3d 835, 839B40 (Tex. 2007); Wise Reg=l Health
Sys., 268 S.W.3d at 804; see also Heinrich, 284 S.W.3d 372B74, 376.

 

BOB
MCCOY

JUSTICE

 

PANEL: GARDNER, WALKER,
and MCCOY, JJ.

 

DELIVERED: August 20,
2009       











[1]See Tex. R. App. P. 47.4.





[2]See Tex. Civ. Prac. &
Rem. Code Ann. ' 51.014(a)(8)
(Vernon 2008).





[3]In McDaniel=s most recent petition,
he adds claims for violations of the Texas constitution.  These claims were not addressed in Double Oak=s plea to the
jurisdiction.





[4]McDaniel quotes section
1.04 of Double Oak Ordinance number 19 in his petition:  

 

Ten percent (10%) of the
pro rata collected shall be retained by the Town to cover [the] administrative
costs. . . .  The amount of pro rata
charged to the owner seeking a connection shall not exceed the original
construction cost of the sanitary sewer main less ten percent (10%) for
administrative costs withheld by the Town. 

 

 





[5]McDaniel recites the
following in his petition in support of these allegations:

 

Double Oak City Ordinance
4.000(a) sets the commercial building permit/inspection fee at $.75 per square
foot plus all required permits and 4.000(b) sets the accessory building permit/inspection
fee at $180.00.

 

The [special use permit]
approved by the Town Council designated only a small portion (approximately
1500 square feet) of Proposed Building #1 as an Onsite Leasing Office and
Upstairs Apartment.  The remainder of Proposed
Building #1, and Proposed Buildings #2, #3, and #4 (roughly 47,912 square feet)
are all accessory buildings under Section 4.000(b) as they contain only
electric and are only being used for storage.

 

 





[6]And if McDaniel had
alleged a claim for prospective relief, to the extent that the ultra vires exception
discussed in Heinrich might apply to defeat governmental immunity here, McDaniel
has failed to join a specific official in his suit against Double Oak.  See Heinrich, 284 S.W.3d at 373.





[7]In his pleadings,
McDaniel attributes his inability to successfully operate his facility both to
the Aover-inclusive invoicing@ with regard to the fees
and to Double Oak=s refusal to admit that
his business=s monument sign had been
approvedCthe sign is not at issue
before us.  He does not allege that the
invoicing prevents him from operating at all, and we are unable to determine
from the pleadings how much of his lack of success is attributable to the
invoicing and how much is attributable to the sign issue.