**Opinion issued October 11, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-15-00422-CV

———————————

## ANHEUSER-BUSCH, L.L.C., Appellant

## V.

## HARRIS COUNTY TAX ASSESSOR-COLLECTOR, Appellee

**On Appeal from the 55th District Court**
**Harris County, Texas**
**Trial Court Case No. 2013-72388**

# O P I N I O N

Ordinarily, Harris County property taxes must be paid before the default February 1 delinquency date to avoid assessment of penalties and interest. Appellant Anheuser-Busch paid its 2012 Harris County property taxes on February 21, 2013, three weeks after the default delinquency date, by which time

Appellee, Harris County Tax Assessor-Collector ("HCTAC"), had assessed $631,114.08 in penalties and interest for untimely payment. Anheuser-Busch paid the assessed penalties and interest and then sued for a declaratory judgment. It alleged that it was entitled to a postponed delinquency date because HCTAC failed to timely send a tax bill to both Anheuser-Busch and its authorized agent for each of the seven properties at issue, as required by Texas Tax Code Section 31.01(a). The trial court granted HCTAC's summary-judgment motion and rendered a take-nothing judgment. Because we conclude that Anheuser-Busch was entitled to a postponed delinquency date for the properties for which HCTAC failed to send a tax bill to both Anheuser-Busch and its duly-appointed authorized agent, we reverse and render judgment, in part, and remand, in part.

**Background**

In 2012, Anheuser-Busch owned seven properties in Harris County that are the subject of this suit. Under the Texas Tax Code, tax assessors are required to "prepare and mail a tax bill to each person in whose name the property is listed on the tax roll and to the person's authorized agent." TEX. TAX CODE § 31.01(a). In order to avoid assessment of penalties and fees, taxes ordinarily must be paid by the default delinquency date of February 1. *Id.* § 31.02. However, "[i]f a tax bill is mailed after January 10," the default delinquency date is postponed for at least 21 days. TEX. TAX CODE § 31.04(a).

According to the affidavit of Elizabeth Doss, HCTAC's Director of the Property Tax Division, HCTAC timely mailed a tax bill for each of Anheuser-Busch's seven properties in November 2012, well before the February 1 default delinquency date. Doss averred that five of the seven Anheuser-Busch tax bills were mailed to Duff & Phelps, L.L.C., Anheuser-Busch's authorized agent for those five properties. Doss further averred that the remaining two tax bills were mailed directly to Anheuser-Busch because it had not appointed an authorized agent for those two properties.[1] Importantly, the parties agree that none of the seven tax bills were mailed to both Anheuser-Busch and Duff & Phelps.

Anheuser-Busch determined the amount of property taxes it owed on its seven properties by checking the Harris County Appraisal District website. Then, on January 23, 2013—one week before the default delinquency date—Anheuser-Busch mailed HCTAC a check in the amount owed: $9,015,011.93. HCTAC received the check on January 28, 2013, but learned on February 5, 2013, that Anheuser-Busch's bank did not honor the check due to internal fraud prevention protocols. HCTAC sent Anheuser-Busch a "delinquent tax bill," which assessed $631,114.08 in penalties and interest in addition to the $9,015,911.93 tax owed.

---

[1] According to Doss's affidavit, Anheuser-Busch appointed Duff & Phelps as its authorized agent with respect to Account Numbers 121-756-001-0001, 121-756-002-0001, 121-756-002-0002, 121-756-003-0001, and 2-0049253, and Anheuser-Busch had not designated an authorized agent with respect to Account Numbers 2-2028682 and 2-2144716.

On February 21, 2013, Anheuser-Busch tendered a check in the amount of $9,015,911.93, which bore the following notation: "To extent applied to penalty and interest, paid under protest." The enclosed cover letter requested that HCTAC waive the assessed penalties and interest. Doss concluded that Anheuser-Busch was not "entitled to a refund" of the assessed penalties and interest because the dishonored check was the fault of Anheuser-Busch, not HCTAC.

Anheuser-Busch later paid the assessed penalties and interest, again noting on its check: "Paid under protest and duress." With that check, Anheuser-Busch enclosed a cover letter stating: "payment is being made under protest and under duress to avoid the accrual of additional interest" and "a petition is being filed with the Harris County District Court requesting a declaratory judgment that Anheuser-Busch, LLC does not owe the associated tax, penalty, and/or interest." Anheuser-Busch then filed this suit.

Both sides moved for summary judgment. In its order denying Anheuser-Busch's motion, the trial court wrote:

> [HCTAC] did not strictly comply with Section 31.01(a) of the Tax Code, but [Anheuser-Busch] had actual notice of the tax, and attempted to pay it prior to the due date. Sections 312.005 and 312.006 of the Government Code direct this Court to diligently attempt to ascertain legislative intent, and to construe statutes to achieve their purpose. The Court ascertains that the purpose of the Tax Code provision at issue is to make sure the taxpayer has notice, not to provide a loophole which allows the taxpayer to avoid timely payment.

4

The trial court subsequently granted HCTAC's motion and entered a take-nothing judgment. Anheuser-Busch appealed.

## Governmental Immunity

Before reaching the merits, we address HCTAC's contention that the trial court lacked subject-matter jurisdiction because Anheuser-Busch failed to establish a waiver of sovereign immunity. "Sovereign immunity protects the State from lawsuits for money damages." *Tex. Nat. Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 853 (Tex. 2002). When bringing suit against a governmental unit, the plaintiff bears the burden of establishing the court's subject matter jurisdiction by alleging a valid waiver of immunity. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003). We review immunity issues under a *de novo* standard. *Tex. Dept. of Transp. v. Sefzik*, 355 S.W.3d 618, 620 (Tex. 2011) (per curiam).

This Court previously has held that "where a claim for declaratory or injunctive relief is brought seeking the refund of illegally collected tax payments, governmental immunity will not apply if the taxpayer alleges that the payments were made as a result of fraud, mutual mistake of fact, or duress, whether express or implied." *Nivens v. City of League City*, 245 S.W.3d 470, 474 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (citing *Dallas Cty. Cmty. Coll. Dist. v. Bolton*, 185 S.W.3d 868, 876–79 (Tex. 2005)). This is the case because "revenue

generated from a tax determined to be illegal should not be treated as property of the State or municipality to which the principles of sovereign immunity apply, and an illegally collected fee should be refunded if paid as a result of fraud, mutual mistake of fact, or duress, without respect to waiver of sovereign immunity." *Id.* (first citing *Camacho v. Samaniego*, 954 S.W.2d 811, 822 (Tex. App.—El Paso 1997, writ denied), then citing *Austin Nat'l Bank of Austin v. Sheppard*, 71 S.W.2d 242, 246 (Tex. 1934)). In such circumstances, no legislative consent to sue is required. *Id.*

In *Nivens*, a number of taxpayers asserted claims for money had and received, breach of contract, and mistake, but they did not seek declaratory or injunctive relief regarding the assessment and refund of allegedly illegal municipal utility district taxes. *Nivens*, 245 S.W.3d at 475. The taxpayers also failed to allege that payments had been made as a result of fraud, mutual mistake of fact, or duress. *Id.* As a result, we held that their claims were barred by governmental immunity. *Id.*

The Fourteenth Court of Appeals reached a similar result in *Tara Partners, Ltd. v. City of S. Houston*, 282 S.W.3d 564 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). In that case, the plaintiff ratepayers brought a declaratory judgment action challenging the city water rates and seeking return of previously paid fees under the equitable doctrine of money had and received. *Id.* at 567–68.

6

The ratepayers argued that they sufficiently alleged that payments were made under duress by pleading that under the "Ordinance, Plaintiffs have been forced to pay arbitrary, unreasonable, excessive, confiscatory, and discriminatory charges for water and sewer service." *Id.* at 577. But the ratepayers notably did not plead that there was a threat of penalties or cessation of water service in the event of late- or non-payment. *Id.* As a result, the *Tara Partners* court determined that the ratepayers failed to plead that payments had been made as a result of duress and their claims were barred by governmental immunity. *Id.*

Unlike the plaintiffs in *Nivens* and *Tara Partners*, Anheuser-Busch seeks only a declaratory judgment that it did not owe penalties or interest assessed and pleaded that it paid the disputed penalties and interest under duress to avoid additional interest from accruing. Paragraph 8 of the First Amended Petition asserts: "Because [HCTAC] continued to accrue interest on the alleged deficiency, [Anheuser-Busch] paid $631,114.08 on December 2, 2013 under protest and under duress in order to stop additional interest from accruing." The Texas Supreme Court has noted that the threat of continually accruing interest may constitute duress. *See, e.g.*, *Miga v. Jensen*, 96 S.W.3d 207, 211, 224–25 (Tex. 2002) (explaining that compulsion "implied by the threat of statutory penalties and accruing interest" constitutes economic duress). Because Anheuser-Busch seeks a declaratory judgment and alleged that it paid the penalties and interest under

7

duress, we conclude that no legislative consent to sue is required. *Id.* (threat of penalties and accruing interest may constitute economic duress); *Nivens*, 245 S.W.3d at 474 (governmental immunity does not apply if taxpayer seeking declaratory relief regarding refund of illegally collected tax payments alleges that payments were made as a result of duress).

## Merits of Summary Judgment

Anheuser-Busch contends that the trial erred in granting summary judgment in HCTAC's favor because HCTAC failed to comply with Tax Code section 31.01(a)'s requirement to mail tax bills to both Anheuser-Busch *and* its authorized agent, and thus postponed the February 1 default delinquency date, making Anheuser-Busch's February 21, 2013 payment timely and not subject to penalties and interest. For its part, HCTAC asserts that (1) it substantially complied with the Tax Code, (2) Anheuser-Busch had actual notice of the tax due and waived any right to complain of lack of notice, and (3) Anheuser-Busch is barred from complaining by the voluntary payment rule.

## A.    Standard of Review

We review the trial court's decision to grant or deny a traditional motion for summary judgment *de novo*. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). If a trial court grants summary judgment without specifying the grounds for granting the motion, we must uphold the trial court's judgment if any

of the grounds are meritorious. *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 148 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). We will consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in favor of the nonmovant. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756 (Tex. 2007) (per curium).

When, as here, the parties file cross-motions for summary judgment on overlapping issues, and the trial court grants one motion and denies the other, we review the summary judgment evidence supporting both motions and "render the judgment that the trial court should have rendered." *Moers v. Harris Cty. Appraisal Dist.*, 469 S.W.3d 655, 660 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) (quoting *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex. 2000)). When reviewing a traditional summary judgment, we must determine whether the movant met its burden to establish that (1) no genuine issue of material fact exists and (2) the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Provident Life and Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003) (citing *Haase v. Glazner*, 62 S.W.3d 795, 797 (Tex. 2001)). "A party moving for summary judgment must establish its right to summary judgment on the issues expressly presented to the trial court by conclusively proving all elements of its cause of action or defense as a matter of law." *Elliot-Williams Co. v. Diaz*, 9 S.W.3d 801, 803 (Tex. 1999) (citations

9

omitted). A movant conclusively establishes a matter when reasonable people could not differ as to the conclusion to be drawn from the evidence. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

Our primary objective in construing statutes is to give effect to the Legislature's intent. *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010). "We rely on the plain meaning of the text as expressing legislative intent unless a different meaning is supplied by legislative definition or is apparent from the context, or the plain meaning leads to absurd results." *Id.* (citing *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008)). "We presume the Legislature selected language in a statute with care and that every word or phrase was used with a purpose in mind." *Id.* (first citing *In re Caballero*, 272 S.W.3d 595, 599 (Tex. 2008), then citing *Chastain v. Koonce*, 700 S.W.2d 579, 582 (Tex. 1985)).

We are further obliged to consider a statute as a whole rather than construing individual provisions in isolation. *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (2001). We must presume that in enacting a statute, the Legislature intended the entire statute to be effective. TEX. GOV'T CODE § 311.021(2). Thus, we should avoid a result that gives one provision a meaning out of harmony or inconsistent with other provisions, though it may be susceptible to such a construction standing alone. *Helena Chem.*, 47 S.W.3d at 493.

10

**B.     Applicable Law**

Section 31.01(a) of the Texas Tax Code requires, with exceptions not applicable here, that assessors—in this case HCTAC—"mail a tax bill to each person in whose name the property is listed on the tax roll and to the person's authorized agent."  TEX. TAX CODE § 31.01(a).  HCTAC is required to mail tax bills by October 1 or as soon thereafter as practicable.  *Id.*

The Tax Code also prescribes the taxpayer's payment deadline—or "delinquency date" in the parlance of the Tax Code—which may vary depending on when an assessor mails a tax bill.  The general rule is that taxes are due on receipt of the tax bill and are delinquent if not paid before February 1 of the year following the year in which imposed.  TEX. TAX CODE § 31.02(a).  However, if a tax bill is mailed after January 10, the February 1 default delinquency date is postponed.  TEX. TAX CODE § 31.04(a).  Generally, the delinquency date is postponed to the first day of the next month that will provide a period of at least 21 days after the date of mailing for payment of taxes before delinquency.  *Id.*  If the delinquency date is postponed in this manner, the postponed delinquency date is the date on which penalties and interest begin to be incurred on the tax.  *Id*. at § 31.04(e).

**C.      Analysis**

*Harmonizing relevant Tax Code provisions*

The question of whether HCTAC was authorized to impose penalties and interest beginning on the February 1 default delinquency date turns on whether Anheuser-Busch's payment was due on that date. HCTAC argues that it was, but Anheuser-Busch argues that the default delinquency date was postponed for at least 21 days because HCTAC failed to mail tax bills to both Anheuser-Bush and its authorized agent by January 10, as required by Texas Tax Code section 31.01(a).

Texas Tax Code section 31.01(a) provides: "the assessor for each taxing unit shall prepare and mail a tax bill to the person in whose name the property is listed on the tax roll and to the person's authorized agent." TEX. TAX CODE § 31.01(a). An earlier version of section 31.01(a) required only that a tax assessor "prepare and mail a tax bill to each person in whose name the property is listed on the tax roll *or* the person's authorized agent." Act of May 20, 2005, 79th R.S., ch. 846, 2005 Tex. Gen. Laws 2888. The legislature amended section 31.01(a) to substitute "and" in place of "or" in 2005. *Id*. Considering the rules of grammar and common usage as well as the apparent legislative intent, we agree with Anheuser-Busch that the legislature's use of the conjunction "and" requires a tax assessor to prepare and mail a tax bill to both the person in whose name the property is listed on the tax

roll (the property owner) and its authorized agent, if any has been duly appointed. *See In re Brookshire Grocery Co.*, 250 S.W.3d 66, 69 (Tex. 2008) ("'And' is conjunctive . . . ." (citing *Bd. of Ins. Comm'rs v. Guardian Life Ins. Co.*, 180 S.W.2d 906, 908 (Tex. 1944) ("Ordinarily, the words 'and' and 'or,' are in no sense interchangeable terms, but, on the contrary, are used in the structure of language for purposes entirely variant, the former being strictly of a conjunctive, the latter, of a disjunctive, nature."))).

HCTAC concedes that Duff & Phelps was Anheuser-Busch's authorized agent for five of the seven properties at issue. It also concedes that HCTAC did not mail a tax bill to both Anheuser-Busch and Duff & Phelps for any of the seven properties at issue. We therefore consider whether HCTAC's failure to mail a tax bill to both Anheuser-Busch and Duff & Phelps postponed the February 1 default delinquency date. Texas Tax Code section 31.01(a) requires that HCTAC mail tax bills "by October 1 or as soon thereafter as practicable." TEX. TAX CODE § 31.01(a). And subsection 31.04(a) postpones the February 1 default delinquency date if a tax bill is mailed after January 10. TEX. TAX CODE § 31.04(a) ("If a tax bill is mailed after January 10, the [February 1] delinquency date . . . is postponed to the first day of the next month that will provide a period of at least 21 days after the date of mailing for payment of taxes before delinquent . . . ."). If the delinquency date is postponed pursuant to subsection 31.04(a), "that postponed

delinquency date is the date on which penalties and interest begin to be incurred on the tax . . . ." TEX. TAX CODE § 31.04(e).

Anheuser-Busch contends that section 31.04 applies to postpone the default February 1 delinquency date in this case because HCTAC failed to mail a tax bill to both it and Duff & Phelps by January 10. *See* TEX. TAX CODE § 31.04(a) ("If a tax bill is mailed after January 10, the [February 1] delinquency date . . . is postponed"). But HCTAC contends that the default delinquency date was not postponed because it substantially complied with section 31.01(a) by mailing a tax bill for each property to either Anheuser-Busch or Duff & Phelps. HCTAC also points out that section 31.01(g) provides that the "failure to send or receive the tax bill required by this section . . . does not affect the validity of the tax, penalty, or interest, the due date, the existence of a tax lien, or any procedure instituted to collect a tax." TEX. TAX CODE § 31.01(g).

Both the Texas Attorney General and this Court have considered and harmonized sections 31.01(g) and 31.04. *See* Op. Tex. Att'y Gen. No. JM–1192 (1990); *Aldine Indep. Sch. Dist. v. Ogg*, 122 S.W.3d 257, 270 (Tex. App.—Houston [1st Dist.] 2003, no pet.). Asked to consider whether the State Property Tax Board correctly construed section 31.04 to prevent the imposition of penalties and interest when no tax bill is mailed because the address of the property owner is unknown, the Attorney General opined:

14

We construe section 31.04 to govern only in instances in which a tax bill can be sent, but is mailed late; it has no application in an instance in which no tax bill can be sent because the name or address of the delinquent taxpayer is unknown. Our construction of section 31.04 harmonizes any apparent conflict with other statutory provisions [including subsection 31.01(g)] and renders any further reliance on abstruse principles of statutory construction otiose.

Op. Tex. Att'y Gen. No. JM–1192 (1990).

This Court similarly has held that section 31.04 applies only "in situations in which the taxing unit has the name and mailing address for the taxpayer, but either neglects to mail the tax bill or mails it late." *Ogg*, 122 S.W.3d at 270. In *Ogg*, the Oggs admitted owing taxes, but argued that they were not obliged to pay penalties and interest because the taxing unit neglected to send tax bills and five-year delinquency notices, as required at the time. *Id.* at 260–61. The *Ogg* court concluded that, because the taxing unit had the Oggs' names and address but neglected to mail tax bills in particular years, the Oggs' delinquency date was postponed and the taxing unit was not entitled to the assessed penalties and interest. *Id.* at 271.

The logic relied upon by the Attorney General and the *Ogg* court applies with equal force now that section 31.01(a) requires a tax bill be sent to both the property owner and any duly-appointed authorized agent. Thus, if a tax assessor has the information necessary to mail the required tax bills to the property owner and its duly-appointed authorized agent, but fails to mail a bill to both by January

15

10, the February 1 default delinquency date is postponed and penalties and interest do not begin to accrue on February 1. TEX. TAX CODE § 31.04; *Ogg*, 122 S.W.3d at 270; Op. Tex. Att'y Gen. No. JM–1192 (1990). This construction of the Tax Code gives effect to all of its provisions. Holding otherwise—that the mailing of a tax bill to either the property owner or its duly-appointed authorized agent by January 10 satisfies section 31.01(a) and will not result in postponement of the default delinquency date—would render section 31.04 meaningless or require us to ignore the Legislature's 2005 amendment to replace section 31.01(a)'s "or" with "and." *See Helena Chem.*, 47 S.W.3d at 493 ("We must presume that the Legislature intends an entire statute to be effective . . . ."); *Tex. Lottery Comm'n*, 325 S.W.3d at 635 (Tex. 2010) (primary objective in construing statutes is to give effect to Legislature's intent).

*Substantial compliance*

HCTAC argues that it substantially complied with section 31.01(a) by mailing each tax bill to either Anheuser-Busch or its authorized agent, and that substantial compliance should be deemed sufficient. Under Texas law, performance of the essential requirements of a statute constitutes substantial compliance. *Harris Cty. Appraisal Dist. v. Bradford Realty, Ltd.*, 919 S.W.2d 131, 135 (Tex. App.—Houston [14th Dist.] 1994, no writ) (quoting *Harris Cty. Appraisal Dist. v. Krupp Realty Ltd. P'ship*, 787 S.W.2d 513, 515 (Tex. App.—

16

Houston [1st Dist.] 1990, no writ) ("A deviation from the requirements of the statute which does not seriously hinder the legislature's purpose in imposing the requirement is 'substantial compliance.'")).

Courts have held that substantial compliance is sufficient where the relevant provision of the Tax Code demands only substantial compliance. *See, e.g.*, *Bradford*, 919 S.W.2d at 135 (holding substantial compliance is sufficient under Section 42.08 of Tax Code which requires court to dismiss pending action if it determines that property owner has not substantially complied with provision). The provisions of the Tax Code relevant here, however, do not expressly state that substantial compliance is sufficient. To the contrary, section 31.04 expressly prohibits a tax assessor from assessing penalties and interest on the default delinquency date if it is postponed pursuant to section 31.04(a).

More to the point, the Legislature amended subsection 31.01(a) to require tax assessors to mail a tax bill to a property owner *and* its authorized agent, if any. When it did so, it did not alter the consequence of a tax assessor's failure to timely mail a required tax bill, which is set forth in section 31.04. *UTHSC v. Gutierrez*, 237 S.W.3d 869, 872 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) ("We presume that the Legislature enacted the statutory change with knowledge of existing law."). Were we to accept HCTAC's argument that mailing a tax bill to either Anheuser-Busch or its authorized agent was sufficient, tax assessors would

be free to disregard the Legislature's directive to mail tax bills to *both* the property owner *and* its authorized agent at their whim. In sum, the plain language of section 31.04 provides that the consequence of a tax assessor's failure to timely mail the required tax bills is that penalties and interest may not be assessed as of the February 1 default delinquency date, and we are not at liberty to rewrite the statute to avoid that consequence. *See Stockton v. Offenbach*, 336 S.W.3d 610, 619 (Tex. 2011) ("When a statute is unambiguous, our role is to apply it as written despite its imperfections."); *Public Utility Comm'n of Tex. v. Cofer*, 754 S.W.2d 121, 124 (Tex. 1988) ("We are not free to rewrite the statutes to reach a result we might consider more desirable, in the name of statutory construction.").

The Legislature is certainly capable of changing the consequence of a tax assessor's failure to send required tax bills. For instance, in 1985, if a taxing authority failed to deliver a required 5-year delinquency notice, "[p]enalties and interest on a tax delinquent more than five years or a multiple of five years are cancelled and may not be collected." Act of May 26, 1985, 69th Leg., R.S., ch. 761, § 1, sec. 33.04, 1985 Tex. Gen. Laws 2600, 2601 (amended 1999) (current version at Tex. Tax Code § 33.04); *Ogg*, 122 S.W.3d at 263–64. The Legislature later amended the statute to place the burden on the taxpayer to raise the failure to send the notice as an affirmative defense. *See* Act of May 30, 1999, 76th Leg., R.S., ch. 1481, § 16, sec. 33.04, 1999 Tex. Gen. Laws 5097, 5101 (amended 2001)

18

(current version at Tex. Tax Code § 33.04); *Ogg*, 122 S.W.3d at 264. And later amendments to section 33.04 eliminated that affirmative defense altogether. *See* Act of May 15, 2001, 77th Leg., R.S., ch. 1430, § 11, sec. 33.04, 2001 Tex. Gen. Laws 5109, 5112 (amended 2013) (current version at Tex. Tax Code § 33.04).

As in the context of the now-extinct 5-year delinquency notices, the legislature was assuredly capable of amending section 31.04 to limit the consequence of failing to comply with section 31.01(a) when it amended that provision in 2005. It did not, and we are not empowered to rewrite its statute. Because section 31.04 does not create an exception for a tax assessor's substantial compliance, we must decline HCTAC's invitation to hold that substantial compliance, i.e., the mailing of one of the two tax bills required by section 31.01(a), was sufficient. *Cofer*, 754 S.W.2d at 124 ("A court may not write special exceptions into a statute so as to make it inapplicable under certain circumstances not mentioned in the statute." (citing *Jefferson Cty. Drainage Dist. No. 6 v. Gary*, 362 S.W.2d 305, 307–08 (Tex. 1962)).

*Waiver*

HCTAC also argues that the summary judgment should be affirmed based on Anheuser-Busch's waiver. First, HCTAC asserts that Anheuser-Busch waived any complaint about imperfect notice by attempting to pay its tax bill before the default February 1 delinquency date. "Waiver is the intentional relinquishment of a right

actually known, or intentional conduct inconsistent with claiming that right." *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008) (citations omitted). "The elements of waiver include (1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right." *Id.* (citing *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996)).

Here, there is no evidence that Anheuser-Busch intended to relinquish its right to avoid penalties and interest by paying its 2012 tax bills before the default delinquency date. If anything, its attempt to pay its tax bills before the February 1 default delinquency date demonstrates that it sought to *preserve* its right to avoid penalties and interest. *See Van Indep. Sch. Dist. v. McCarty*, 165 S.W.3d 351, 353 (Tex. 2005) ("While waiver may sometimes be established by conduct, that conduct must be unequivocally inconsistent with claiming a known right."). Accordingly, we find no merit in HCTAC's argument that Anheuser-Busch waived postponement of its delinquency date by attempting to tender payment before that date.

HCTAC's second waiver argument is based on the terms of the Appointment of Agent form by which Anheuser-Busch designated Duff & Phelps as its authorized agent. In particular, HCTAC argues that the form, which incorrectly

informs the taxpayer that "the affected offices are not required by law to send you duplicate copies," operates as a waiver of section 31.01(a)'s requirement that notice be mailed to both the taxpayer and its authorized agent. We disagree. The version of the form that Anheuser-Busch completed does not inform the taxpayer of the existence of a right to have a tax bill mailed to both the taxpayer and its authorized agent, nor does it reflect Anheuser-Busch's assent to relinquish that right. *Ulico Cas. Co.*, 262 S.W.3d at 778 (waiver requires party's actual knowledge of existence of right and actual intent to relinquish it). Indeed, the form advises the taxpayer, contrary to the plain text of section 31.01(a), that it does not have a right to have a tax bill mailed to both itself and its authorized agent.

*Voluntary payment rule*

Finally, HCTAC contends that the voluntary payment rule prevents Anheuser-Busch from complaining of lack of notice because it issued a check to HCTAC before the default delinquency date. It has long been the rule in Texas that "a tax voluntarily paid cannot be recovered, though it had not the semblance of legality." *City of Houston v. Feizer*, 13 S.W. 266, 267 (Tex. 1890). This voluntary payment rule "secures taxing authorities in the orderly conduct of their financial affairs," serves the "government's exceedingly strong interest in financial stability," and "supports the age-old policies of discouraging litigation with the government." *Bolton*, 185 S.W.3d at 876–77 (citations omitted). The voluntary

payment rule also operates to prevent a party from misleading his opponent into believing the controversy is resolved before later contesting the payment and seeking recovery. *Highland Church of Christ v. Powell*, 640 S.W.2d 235, 236 (Tex. 1982). When the facts are undisputed, as in this case, determination of whether a payment is voluntary is a question of law. *Bolton*, 185 S.W.3d at 880.

We reject HCTAC's voluntary payment rule argument because Anheuser-Busch does not seek recovery of the amount of property taxes it voluntarily paid in February 2013. It seeks only recovery of assessed penalties and interest, which it tendered under protest and duress to prevent accrual of additional interest. *See Miga*, 96 S.W.3d at 211, 224–25 (explaining that payment in attempt to avoid further accrual of interest is made under duress and not voluntary when debtor clearly expresses intent to contest payment and recovery). The summary judgment record contains no evidence that Anheuser-Busch's conduct suggested that the controversy was resolved; to the contrary, it announced its intent to pursue litigation. *See Highland Church*, 640 S.W.2d at 236. Accordingly, we conclude that the voluntary payment rule is inapplicable.

## D.  Application to Summary Judgment Evidence and Disposition

The parties agree that Anheuser-Busch duly appointed Duff & Phelps as its authorized agent with respect to five properties: Account Numbers 121-756-001-0001, 121-756-002-0001, 121-756-002-0002, 121-756-003-0001, and 2-0049253.

HCTAC concedes that it did not mail a tax bill to each of Anheuser-Busch and its authorized agent with respect to these properties. Therefore, no material factual dispute exists with respect to these five properties. For the reasons discussed above, we conclude that, with respect to these five properties, Anheuser-Busch's delinquency date was postponed pursuant to section 31.04, and its February 2013 payment was timely. Thus, with respect to Account Numbers 121-756-001-0001, 121-756-002-0001, 121-756-002-0002, 121-756-003-0001, and 2-0049253, we reverse the trial court's rendition of summary judgment in favor of HCTAC and render judgment that Anheuser-Busch did not owe penalties and interest on its 2012 Harris County property taxes.

There is, however, a material factual dispute which prevents us from rendering judgment with respect to the remaining two properties: Account Numbers 2-2028682 and 2-2144716. The summary judgment evidence includes the Appointment of Agent for Property Taxes form that Anheuser-Bush submitted to HCTAC in June 2012. The form reflects that Anheuser-Busch appointed Duff & Phelps as its authorized agent for "All Harris County Appraisal District property." However, Doss averred, without explanation, that HCTAC mailed tax bills for these two properties only to Anheuser-Busch because Anheuser-Busch had not appointed an authorized agent for either property. The summary judgment evidence thus raises a fact issue as to whether Anheuser-Busch duly designated

23

Duff & Phelps as its authorized agent for Account Numbers 2-2028682 and 2-2144716 so as to trigger the requirement that a tax bill be mailed to both Anheuser-Busch and Duff & Phelps. Accordingly, with respect to these two properties, we reverse the trial court's rendition of summary judgment in favor of HCTAC, and remand for further proceedings.

## Conclusion

For the reasons discussed above, we reverse the trial court's rendition of summary judgment in favor of HCTAC. With respect to Account Numbers 121-756-001-0001, 121-756-002-0001, 121-756-002-0002, 121-756-003-0001, and 2-0049253, for which the parties agree that an authorized agent had been duly appointed, we hold that HCTAC's failure to mail tax notices to both Anheuser-Busch and its authorized agent postponed the February 1 default delinquency date and precluded HCTAC from assessing penalties and interest as of February 1. Accordingly, we render judgment that Anheuser-Busch did not owe and is entitled to a refund of penalties and interest for 2012 Harris County property taxes with respect to these five properties.

With respect to Account Numbers 2-2028682 and 2-2144716, we conclude that there is a fact issue about whether Anheuser-Busch's appointment of an authorized agent was valid such that notice to both Anheuser-Busch and its

24

authorized agent was required. Accordingly, we remand for further proceedings consistent with this opinion.

Rebeca Huddle
Justice

Panel consists of Justices Jennings, Massengale, and Huddle.