**Opinion issued August 11, 2022**



**In The**

# Court of Appeals

**For The**

# First District of Texas

_____

### NO. 01-20-00287-CV

_____

**CITY OF PASADENA, JEFF WAGNER, AND ROBIN GREEN, Appellants**

**V.**

**APTVV, LLC AND APTPCY, LLC, Appellees**

---

**On Appeal from the 334th District Court**
**Harris County, Texas**
**Trial Court Case No. 2018-25740**

---

## MEMORANDUM OPINION

Two Pasadena apartment-complex owners sued the City of Pasadena, its mayor, and its director of public works. The City moved to dismiss for lack of subject matter jurisdiction, asserting governmental immunity from suit. The trial court denied the City's plea to the jurisdiction. In five issues, the City, its mayor,

and its director of public works contend that the trial court erred in denying the plea to the jurisdiction.

We affirm.

## Background

APTVV, LLC owns the Victoria Village Apartments, a 612-unit apartment complex in the City of Pasadena. APTPCY, LLC owns the Courtyard Apartments, a 195-unit apartment complex also in the City of Pasadena. The two entities will be referred to collectively as Apartment Owners.

The Apartment Owners have sued the City of Pasadena and two city officials in a declaratory judgment action seeking the return of money paid to the City through utility and trash-collection billing, plus attorney's fees. They allege that the City implemented a waste-removal scheme granting an exclusive contract to Waste Management to provide trash-removal services to all non-residential customers in the City, and requiring all non-residential trash-removal customers to use Waste Management and to pay whatever amount the City dictated.

Through a 2018 City ordinance, the City specified a base rate for Waste Management's services. The base rate set the maximum that Waste Management was allowed to charge non-residential customers for trash removal. The rate varied depending on the quantity and frequency of trash-removal services.

2

Through the same 2018 City ordinance, the City imposed a 25% City Fee on trash-removal bills that were paid, meaning that 25% of the money Waste Management received as payment for trash-removal services for non-residential customers would be forwarded to the City in exchange for the exclusive right to collect trash within the city limits.[1] The City's fee schedule stated that the 25% City Fee was included in the base rate amount set by the City.

One of the bills in dispute charged for the removal of trash from front-end-load, 8-yards containers four times per week. The City's fee schedule listed a base rate for that monthly service of $507.58, which included the 25% City Fee. The record contains bills sent from before and after the 2018 ordinance and fee schedule took effect. The pre-2018-ordinance bill includes a single line item for trash service without specifically noting the 10% City Fee and then other line items for city taxes. According to the record evidence, the then-applicable 10% City Fee was included in the base rate figure. The post-2018-ordinance bills are structured differently. There is a line item for the base rate, a second line item for the 25% City Fee, and other line items for city taxes. The bills in the record generally increased about 16% after the 2018 ordinance and its 25% City Fee were applied.

The Apartment Owners sued, alleging that the City Fee is an impermissible tax by the City that is being imposed on commercial customers, who are forced to

_____

[1] Before 2018, the City Fee had been 10%.

3

accept trash-removal services from Waste Management under the City-created monopoly and forced to pay a 25% tax on the mandated services. The Apartment Owners characterize the 25% City Fee as a "kickback." According to the Apartment Owners, if they were to refuse to accept trash-removal services under the monopoly or to pay the 25% kickback to the City, the City could pursue both civil remedies for uncollected solid waste constituting a nuisance and criminal sanctions for non-compliance.

The Apartment Owners' declaratory judgment action against the City seeks (1) a determination that the 25% City Fee is an illegal and unconstitutional tax applied to local businesses through a trash-collection scheme, (2) return of past payments of the City Fee, and (3) attorney's fees. They assert that they have paid the illegal fee under duress because, otherwise, they would have faced civil and criminal penalties.

In the same declaratory judgment action, APTVV challenges a "customer service inspection certification charge" that appeared on its August 2016 utility bill in the amount of $12,240. APTVV alleges it paid the fee to the City under the same duress and has demanded its refund. The City allegedly responded that the fee represented a $20-per-unit inspection charge for the 612-unit apartment complex. APTVV disputes that any City official inspected all 612 units at its complex and argues that, aside from the charge having no factual basis, it is

4

unconstitutionally excessive. APTVV includes in its declaratory judgment action a claim for the return of the $12,240 inspection certification charge it paid to the City under duress.

Along with the declaratory judgment action against the City, the Apartment Owners suit includes a breach-of-contract claim against Waste Management seeking monetary damages.

The City and its officials moved to dismiss the claims against them on the ground that the City enjoys governmental immunity from suit and all claims against the officials are claims against the City. The Apartment Owners responded. They emphasized that their burden in defeating a plea to the jurisdiction is only to *allege* facts that, if taken as true, establish jurisdiction, not to prove their allegations at this preliminary stage of the litigation. And they argued that the City does not have immunity against suits seeking declaratory relief and the return of money had and received, relying on *Federal Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 404 (Tex. 1997), and *Nivens v. City of League City*, 245 S.W.3d 470, 475 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

The trial court denied the City's plea to the jurisdiction, and the City and its officials appealed.[2] They raise five issues, which we quote below:

---

[2]     Waste Management is not a party to this appeal.

5

1. Appellees' claim for money had and received is barred by governmental immunity because there is no statutory waiver of immunity for this or any other quasi-contractual claims.

2. Appellees' claim against the City for declaratory relief, which merely couches their claim for monetary damages as a request for declaratory relief, is barred by the City's governmental immunity because the Declaratory Judgment Act is merely a procedural device for claims over which a court has subject matter jurisdiction.

3. Because Appellees are neither a party nor third-party beneficiary to the City's contract with Waste Management, Appellees lack standing to challenge the City's exclusive waste contract with Waste Management.

4. The City's exclusive franchise contract with Waste Management for commercial solid waste disposal within the city is permissible under Texas statute and constitutional.

5. Appellees fail to and cannot assert a valid ultra vires claim against Mayor Jeff Wagner, and Robin Green, the City's Public Works Director, because Mayor Wagner and Green did not enter into the Contract with Waste Management and, as a result, neither Wagner nor Green could be a responsible government actor for Appellees' ultra vires claim.

## Plea to the Jurisdiction

The City contends that the Apartment Owners did not overcome the presumption of governmental immunity and that there is no statutory waiver of immunity for these contractual and "quasi-contractual" claims. As a result, the City argues, the trial court erred in denying its plea to the jurisdiction.

## A.    Standard of review

A de novo standard of review applies to a trial court's ruling on a plea to the jurisdiction based on governmental immunity. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004); *Tex. S. Univ. v. Gilford*, 277

6

S.W.3d 65, 68 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). The plaintiffs have the burden to allege facts that affirmatively demonstrate the trial court's subject-matter jurisdiction. *Gilford*, 277 S.W.3d at 68 (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). We construe the pleadings liberally and accept the plaintiff's factual allegations as true. *See Miranda*, 133 S.W.3d at 226–27; *Gilford*, 277 S.W.3d at 68.

## B.    Governmental immunity

Governmental immunity defeats a trial court's subject matter jurisdiction and is properly raised in a plea to the jurisdiction. *Nivens*, 245 S.W.3d at 474. It protects political subdivision of the state, like municipalities, from suit when it applies. *Id.* A party suing a municipality engaged in a government function must establish consent to sue, either through express legislative permission or by statute. *See id.*

But governmental immunity will not apply if a plaintiff alleges that illegal tax payments were made because of duress, fraud, or mutual mistake of fact. *Id.* In that context, the money collected from an illegal tax is not treated as the municipality's property and subject to immunity; instead, "an illegally collected fee should be refunded if paid as a result of fraud, mutual mistake of fact, or duress, without respect to waiver of sovereign immunity. No legislative consent to sue is needed under these circumstances." *Id.* Thus, when plaintiffs seek

7

declaratory or injunctive relief, including a refund of illegally collected tax payments, consent to sue is not required. *Id.*

In *Nivens*, taxpayers asserted claims for money had and received but did not seek declaratory or injunctive relief and did not allege that their payments resulted from fraud, mutual mistake of fact, or duress. *Id.* Thus, this Court held that their claims were barred by governmental immunity. *Id.*; *see Tara Ptrs., Ltd. v. City of S. Houston*, 282 S.W.3d 564 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (holding that claims were barred by governmental immunity because ratepayers did not plead that they paid under duress).

Later, in *Anheuser-Busch, L.L.C. v. Harris County Tax Assessor-Collector*, 516 S.W.3d 1 (Tex. App.—Houston [1st Dist.] 2016, pet. denied), a taxpayer was assessed over $600,000 in penalties and interest on its delinquent tax payment. *Id.* at 4. The taxpayer paid the penalty to avoid additional penalties and interest and then sued for its return. *Id.* at 5. The tax assessor-collector argued that it had governmental immunity and that the trial court lacked subject-matter jurisdiction. *Id.* Relying on *Nevins*, we held that no legislative consent to sue was required because the taxpayer sought a declaratory judgment and alleged it paid the improper penalties and interest under duress. *Id.* Immunity did not protect the tax assessor-collector from suit; consent to sue was not required. *Id.*

8

Like the *Anheuser-Busch* taxpayer, the Property Owners brought a declaratory judgment action, asserting a claim for money had and received and requesting return of allegedly illegal tax payments. This scenario fits within our precedent and compels the conclusion that no legislative consent to sue is required and no immunity from suit exists. *Nivins*, 245 S.W.3d at 474; *Anheuser-Busch*, 516 S.W.3d at 6.[3]

The City's reliance on *Tooke v. City of Mexia*, 197 S.W.3d 325 (Tex. 2006), is misplaced in that it is a breach-of-contract case involving a claim for consequential damages. Likewise, the City's merits arguments that its fee is constitutional and that the Apartment Owners have simply misread their bill is misplaced. At this stage of the litigation, our review is limited to whether the plaintiffs have asserted facts that demonstrate the trial court's subject matter jurisdiction, taking all factual assertions in the plaintiffs' pleadings as true. *See Miranda*, 133 S.W.3d at 226–27; *Gilford*, 277 S.W.3d at 68. Whether the 25% City Fee is a legitimate fee or an unconstitutional tax is not before us.

Because we conclude that the trial court did not err in denying the plea to the jurisdiction and that the merits arguments are not before us, we overrule the City's first, second, and fourth issues.

---

[3] The City acknowledges the *Nivens* opinion but only through a single *cf.* citation with no analysis.

## C.    Standing to claim breach of contract

Next, the City argues that the Apartment Owners lack standing to bring a breach-of-contract claim because the Apartment Owners are neither signatories nor third-party beneficiaries of the contract between the City and Waste Management. Thus, the City argues, they cannot "challenge or enforce" the contract.

The Apartment Owners do not assert a breach-of-contract claim against the City. Their breach-of-contract claim is against Waste Management only. Waste Management is not a party to this appeal and is not pursuing a standing challenge on the sole breach-of-contract claim in this suit.

The City may not seek to limit the Apartment Owners' claims against or recovery from nonappealing codefendants in its appeal of an adverse ruling. *See Jackson v. Fontaine's Clinics, Inc.*, 499 S.W.2d 87, 92 (Tex. 1973) (when appealing defendant challenged plaintiffs' right to recover from nonappealing codefendant, Court held that appealing defendant "may not complain of errors which do not injuriously affect him or which merely affect the rights of others."). Moreover, the Apartment Owners' declaratory judgment action against the City does not seek to "challenge or enforce" the contract between the City and Waste Management, as the City contends, but, rather, to obtain the return of allegedly unconstitutional taxes imposed under the terms of a city ordinance.

10

We overrule the City's third issue.[4]

## D.    Ultra Vires argument does not support reversal of plea ruling

In the fifth and final issue, the City and its officials argue that no part of the Apartment Owners' suit survives the assertion of governmental immunity because the claims against the officials are not true ultra vires claims.

This appeal challenges a single ruling by the trial court—that the City lacks governmental immunity from suit and that its plea to the jurisdiction is therefore denied. We have already concluded that governmental immunity is unavailable to force the dismissal of the Apartment Owners' claims against the City. Whether the city officials were acting within their authority or ultra vires cannot provide another means for reversing the ruling being challenged. Thus, this is not an issue that is currently before us.

Had the City prevailed on appeal in establishing governmental immunity, then the viability of the continued claims against the city officials as a suit for ultra vires acts would possibly be before us. But with our holding that the trial court did

---

[4]    To the extent the City's standing complaint is that the Apartment Owners have no particularized injury given that others similarly pay the fee, the Texas Supreme Court's recent decision in *Perez v. Turner*, No. 20-0382, — S.W.3d —, 2022 WL 2080868 (Tex. June 10, 2022), forecloses it. A plaintiff has standing to seek reimbursement of a fee because the plaintiff is out-of-pocket the money paid for the fee. *Id.* at *7. The fee does not have to be declared invalid to grant the plaintiff standing. *Id.* (noting that the Court's standing analysis focuses on the nature of the injury, not the merits of the claim). A small fee paid is a particularized injury to establish standing, regardless of whether the merits of the legal challenge to the fee ultimately are resolved in the plaintiff's favor. *See id.* at *6–7.

not err in rejecting the claim of governmental immunity or in denying the plea to the jurisdiction on that ground, the viability of claims against city officials individually is outside the issue being appealed, which is jurisdictional.

We overrule the fifth issue.

## Conclusion

We affirm.

Sarah Beth Landau
Justice

Panel consists of Justices Kelly, Landau, and Hightower.