

# Fourth Court of Appeals
## San Antonio, Texas

**MEMORANDUM OPINION**

No. 04-24-00186-CV

Sonja **MULLERIN**,
Appellant

v.

Albert **URESTI**, in his official capacity as
Bexar County Tax Assessor Collector,
Appellee

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2024CI05711
Honorable Norma Gonzales, Judge Presiding

Opinion by:    Velia J. Meza, Justice

Sitting:       Rebeca C. Martinez, Chief Justice
               Lori Massey Brissette, Justice
               Velia J. Meza, Justice

Delivered and Filed: July 9, 2025

AFFIRMED

Sonja Mullerin appeals the trial court's order granting the Bexar County Tax Assessor-Collector's, Albert Uresti's, plea to the jurisdiction, dismissing her claims against Uresti with prejudice. We affirm.

## BACKGROUND

In Mullerin's live pleading,[1] she explains that her brother, Hugh Maynard, owned the property at issue in this case located in San Antonio, Bexar County, Texas (hereinafter, the "Property"). Since August 2016, Mullerin has resided at the Property and used it as her primary residence. However, on April 14, 2021, Maynard transferred ownership of the Property to Mullerin by deed. As the new owner of the Property, Mullerin paid the 2021 ad valorem taxes without protest in December of that year. The following year Mullerin filed a protest of the appraised value of 2022. The protest was heard by the Bexar County Appraisal Review Board (hereinafter, "ARB") on October 6, 2022. After the ARB determined Mullerin's protest, Mullerin sought judicial review on January 1, 2023.

In her original petition, Mullerin alleged several causes of action and sought injunctive relief and damages against the Bexar County Appraisal District; Michael Amezquita, in his official capacity as Chief Appraiser of the Bexar County Appraisal District; and Uresti, in his official capacity as the Bexar County Tax Assessor-Collector. Additionally, Mullerin alleged and sought a refund for overpayment of 2021 ad valorem taxes.

On January 30, 2023, Mullerin effectuated the service of process to Albert Uresti by personally delivering the citation by certified mail to Uresti's post office box. A person named George Puente signed for the return receipt. On February 24, 2023, Mullerin filed a verified motion for default judgment against Uresti alleging he did not file an answer within the requisite period. Before the trial court considered Mullerin's request for a default judgment, Uresti filed his original answer which generally denied Mullerin's claims. Mullerin subsequently served Uresti with requests for production on July 8, 2023. Alleging her requests were not answered, she sought

---

[1] We note that in this case, the record consists of only the clerk's record. Therefore, we are relying on the parties' pleadings to formulate our background.

sanctions—in the form of a default—against Uresti pursuant to Texas Rule of Civil Procedure 215(b)(5).

On August 28, 2023, Uresti amended his answer which again only generally denied Mullerin's claims and did not raise any affirmative defenses or governmental immunity. On August 31, 2023, Uresti filed his plea to the jurisdiction and for the first time raised the issue of sovereign immunity. Mullerin responded to Uresti's plea to the jurisdiction arguing that such motion was "out of time" pursuant to Texas Rules of Civil Procedure 91a and 94 and should not be considered while her motion for sanctions against Uresti was pending.

On September 11, 2023, the trial court heard Uresti's plea to the jurisdiction, granted it on September 15, 2023, and dismissed Mullerin's claims against Uresti with prejudice. Mullerin appealed.

## DISCUSSION

In two issues, Mullerin argues that (1) by making a general appearance, Uresti's answer should have been stricken for violating the discovery rules and (2) governmental immunity[2] is inapplicable in a suit for equitable relief.

### 1. Standard of Review

We review government immunity issues de novo. *Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 620 (Tex. 2011) (per curium). Sovereign immunity covers the State's immunity from suit and liability. *Harris Cnty. Toll Rd. Auth. v. Sw. Bell Tel., L.P.*, 263 S.W.3d 48, 60 (Tex. App.—Houston [1st Dist.] 2006), aff'd, 282 S.W.3d 59 (Tex. 2009) (citation omitted). Similarly, governmental immunity protects political subdivisions of the state, including the office of the county tax assessor-collector, from suit and liability. *Id.*; *see also Lubbock Cnty. Tax Assessor v.*

---

[2] Although the parties used the term "sovereign immunity" in their pleadings and briefs, we will use the term "governmental immunity" in our analysis for reasons stated below.

*Mabry,* No. 07-98-0365-CV, 1999 WL 355903, at \*1 (Tex. App.—Amarillo Mar. 30, 1999, no pet.) (holding that the tax assessor-collector office is a government unit). While the two terms are used interchangeably, sovereign immunity and governmental immunity are distinct from each other. *Sweeny Cmty. Hosp. v. Mendez*, 226 S.W.3d 584, 588 n.7 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citation omitted). Thus, because Uresti's position as the Bexar County Tax Assessor-Collector is one within a political subdivision of the state, rather than the State of Texas, our analysis focuses on governmental immunity.

To establish the trial court's jurisdiction, the plaintiff must allege a valid waiver of immunity that affirmatively demonstrates the trial court's jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). "To determine if the plaintiff has met that burden, 'we consider the facts alleged by the plaintiff and, to the extent it is relevant to the jurisdictional issue, the evidence submitted by the parties.'" *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003) (quoting *Tex. Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 868 (Tex.2001)). Because the trial court's, as well as our own, subject-matter jurisdiction "depends on the resolution of the [governmental] immunity issue, we begin with that issue." *Tex. Educ. Agency v. Am. YouthWorks, Inc.*, 496 S.W.3d 244, 255 (Tex. App.—Austin 2016), aff'd sub nom. *Honors Acad., Inc. v. Tex. Educ. Agency*, 555 S.W.3d 54 (Tex. 2018).

2.      The Immunity Issue

In her second issue, Mullerin asserts that by failing to assert governmental immunity as an affirmative defense at the onset of the case, Uresti waived his governmental immunity. Additionally, she argues that governmental immunity does not apply in suits for equitable relief, including suits for refund of taxes illegally collected. We disagree.

As noted above, governmental immunity protects political subdivisions of the state from suit and liability. When a suit is initiated against a government official in their official capacity, such suit is not against the official personally, but rather against the government. *Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 844 (Tex. 2007); *Liberty Mut. Ins. Co. v. Sharp*, 874 S.W.2d 736, 738 (Tex. App.—Austin 1994, writ denied). In such a suit, when a government official files a plea to the jurisdiction, challenging the court's authority to hear the case and asserting that governmental immunity bars the claim, "the official is invoking the [governmental] immunity from suit held by the government itself." *Tex. A & M Univ. Sys.*, 233 S.W.3d at 844.

Contrarily, ultra vires suits against government official acting outside their authority are not barred by governmental immunity. *Schroeder v. Escalera Ranch Owners' Ass'n, Inc.*, 646 S.W.3d 329, 332 (Tex. 2022) (citation omitted). Thus, before addressing the governmental immunity question, we must first determine whether Mullerin's suit against Uresti "is merely another way of pleading an action against the entity of which [Uresti] is an agent." *Tex. A & M Univ. Sys.*, 233 S.W.3d at 844 (internal quotation marks omitted).

3.      Mullerin Did Not Plead a Valid Ultra Vires Claim Against Uresti

In this case, Mullerin sued Uresti in his official capacity as the Bexar County Tax Assessor-Collector. Mullerin specifically complained that Uresti wrongfully placed an interest accruing tax lien on the Property for the unpaid 2022 ad valorem taxes,[3] and sought a refund for the alleged overpayment she made in 2021.

It is uncontroverted that Uresti, in his official capacity as the Bexar County Tax Assessor-Collector, is authorized to "assess and collect taxes on property in the county for the county. He shall also assess and collect taxes on property for another taxing unit if" required to do so by law,

---

[3] Because Mullerin is over 65 years of age, she opted to defer the collection of her property taxes pursuant to the Tax Code. TEX. TAX CODE § 33.06.

contract, or by the taxing unit's governing body. TEX. TAX CODE § 6.23; *see also* TEX. CONST. art. VIII, § 14 (stating that the "assessor-collector of taxes . . . shall perform all the duties with respect to assessing property for the purpose of taxation and of collecting taxes, as may be prescribed by the Legislature."). Additionally, the Tax Code provides that a "tax lien remains on the property and interest continues to accrue during the period collection of taxes is deferred," including when an individual over 65 requests deferment of collection. TEX. TAX CODE § 33.06. The actions complained of are within the tax assessor-collector's authority and are not in conflict with the law. *Schroeder*, 646 S.W.3d at 332. Consequently, since the challenged actions "were not truly outside [Uresti]'s authority or in conflict with the law," Mullerin failed to plead a valid ultra vires claim, making it a suit against the Bexar County Tax Assessor-Collector's office, rather than Uresti himself. *Id.* at 333 (citation omitted).

4.    Governmental Immunity Can Be Raised at Any Time

We next address Mullerin's contention that governmental immunity was waived since it was not pled as an affirmative defense at the onset of the case. We disagree.

In making this argument, Mullerin points us to Texas Rule of Civil Procedure 94 for the notion that "[i]n a pleading to a preceding pleading, a party shall set forth affirmatively . . . any . . . matter constituting an avoidance or affirmative defense." TEX. R. CIV. P. 94. And since Uresti never filed an answer asserting governmental immunity, Mullerin contends that Uresti's plea to the jurisdiction is barred. However, Mullerin's reliance on Rule 94 of the Texas Rules of Civil Procedure is misplaced.

In *Rusk State Hosp. v. Black*, Rusk State Hospital raised for the first time on appeal its governmental immunity. 392 S.W.3d 88, 94 (Tex. 2012). The Supreme Court of Texas held "that if immunity is first asserted on interlocutory appeal," appellate courts must still "consider the issue

at the outset in order to determine whether [the appellate court itself] has jurisdiction to address the merits." *Id.* at 95. Therefore, governmental immunity is not subject to the pleading requirements of Texas Rule of Civil Procedure 94. Instead, it can be raised at any time, including for the first time on appeal. *See id.* Consequently, Uresti did not waive governmental immunity by failing to plead it as an affirmative defense at the onset of the case.

5.      Mullerin's Suit Against Uresti Is Barred by Governmental Immunity

Because we find that Uresti did not waive governmental immunity, we must examine Mullerin's pleadings for factual assertions, that if true, affirmatively demonstrate that governmental immunity either does not apply, or has been waived. *Perez v. Turner*, 653 S.W.3d 191, 202 (Tex. 2022).

5.1     Governmental Immunity Is Applicable Against Mullerin's Claims

Mullerin asserts that governmental immunity is inapplicable to the declaratory and injunctive relief sought against Uresti. Mullerin relies on *Anheuser-Busch, L.L.C. v. Harris Cnty. Tax Assessor-Collector*, in which our sister court held that "where a claim for declaratory or injunctive relief is brought seeking the refund of illegally collected tax payments, governmental immunity will not apply if the taxpayer alleged that the payments were made as a result of fraud, mutual mistake of fact, or duress, whether express or implied." 516 S.W.3d 1, 5 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (internal quotation marks omitted). The court found that Anheuser-Busch's allegations—that it paid penalties and interest under protest and duress to avoid further accrual—were sufficient to bypass immunity and proceed with its declaratory judgment claim. *Id.*

Additionally, in *Bolton*, the supreme court recognized the common law rules of duress and voluntary payments to the government in which "a person who pays government fees and taxes

under duress has a valid claim for their repayment." *Id.* at 877 (citations omitted). However, the supreme court has recognized that "[i]n many areas, the common [] law requirements for voluntary payments and duress have been supplanted by statute[s]" that provide "refund mechanisms and protest requirements." *Id.* at 879. With respect to property taxes, the supreme court found that the common law requirements were superseded by the Tax Code which created "mechanisms to protest the payment of ad valorem taxes in order to recover an overpayment." *Id.*

Although the Legislature established various protest mechanisms, the taxpayers in *Bolton* and *Anheuser-Busch, L.L.C.*, objected to taxes, fees, or penalties that did not have an applicable statutory protest procedure. *Bolton*, 185 S.W.3d at 879–80 (holding that there was no statutory protest and refund mechanism applicable to the fees charged by the public junior college); *Anheuser-Busch, L.L.C.*, 516 S.W.3d at 8–9 (discussing Anheuser-Busch, L.L.C's argument that the tax assessor failed to provide them with the required notice under section 33.01 of the Tax Code, which we note is not an authorized ground of protest within the Tax Code). Accordingly, because the statutes did not supersede the common law rules of duress and voluntary payment with regards to the taxes, fees, or penalties at issue, the *Bolton* and *Anheuser-Busch, L.L.C.* courts applied a narrow exception to governmental immunity. *Bolton*, 185 S.W.3d at 879–80; *Anheuser-Busch, L.L.C.*, 516 S.W.3d at 7.

By contrast, Mullerin's case does not involve a refund of an unlawful tax which lacks a protest and refund mechanism. Rather, her complaints lie squarely within the Tax Code's authorization to protest the "determination of the appraised value of [her] property," the "unequal appraisal of [her] property" and "any other action of the chief appraiser, appraisal district, or appraisal review board that applies to an adversely affects [her]." TEX. TAX CODE § 41.41(a)(1),

(2), (9). Therefore, we conclude that governmental immunity is applicable to Mullerin's claims against Uresti.

### 5.2 The Tax Code's Limited Waiver Does Not Expressly Waive Uresti's Governmental Immunity

The Legislature, in enacting the Tax Code, "establishe[d] a detailed set of procedures that property owners must abide by to contest the imposition of property taxes." *Oncor Elec. Delivery Co. NTU, LLC v. Wilbarger Cnty. Appraisal Dist.*, 691 S.W.3d 890, 895 (Tex. 2024) (internal quotation marks omitted). The procedures and remedies prescribed in the Tax Code "are exclusive, and a property owner may not raise any of those grounds . . . as a basis of a claim for relief in a suit by the property owner to arrest or prevent the tax collection process or to obtain a refund of taxes paid." TEX. TAX CODE § 42.09(a)(2). Thus, the Tax Code provides a limited waiver of governmental immunity and allows property owners to seek a petition for review of an ARB's determination of, among other things, a protest by the property owner as provided by subchapter C of Chapter 41. TEX. TAX CODE § 42.01. And these petitions for review provided for by the Tax Code are brought against the appraisal district, not the county tax-assessor collector. *Id.* § 42.21(b).

In this case, Mullerin seeks a refund from Uresti for the alleged overpayment of ad valorem taxes on the Property in 2021. However, the record reflects that Mullerin failed to protest the 2021 ad valorem taxes as required under the Texas Tax Code. *See* TEX. TAX CODE § 42.01. Consequently, Mullerin's "failure to pursue and to exhaust administrative remedies deprives [the] trial court of jurisdiction over" her 2021 refund claim. *ABT Galveston Ltd. P'ship v. Galveston Cent. Appraisal Dist.*, 137 S.W.3d 146, 152 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (citations omitted).

Moreover, Mullerin seeks injunctive relief, requiring Uresti to correct the amount of the tax lien placed on her Property for the unpaid 2022 ad valorem taxes and to enjoin Uresti from

placing future tax liens on her property. The Tax Code makes clear that the injunctive relief sought by Mullerin is barred. *See* TEX. TAX CODE § 42.09; *see also Brazoria Cnty. Appraisal Dist. v. Notlef, Inc.*, 721 S.W.2d 391, 393 (Tex. App.—Corpus Christi–Edinburg 1986, no writ). This is especially true because Mullerin's injunctive relief would prevent the implementation of the Tax Code's scheme, conflicting "with the Tax Code as a whole and section 42.09 [and 33.06] in particular." *Brazoria Cnty. Appraisal Dist.*, 721 S.W.2d at 393; TEX. TAX CODE §§ 42.09, 33.06.

Consequently, because the facts pled by Mullerin, even if taken as true, do not affirmatively demonstrate a waiver of governmental immunity, we conclude that her claims are barred by governmental immunity and overrule her second point of error.[4]

## CONCLUSION

Accordingly, we affirm the judgment.

Velia J. Meza, Justice

---

[4] Because we overrule Mullerin's second issue, we need not reach her first issue of whether the trial court should have stricken Uresti's answer and defaulted against him for violating discovery rules.